Tora C. BRENNAN, Plaintiff,

v.

MIDWESTERN UNITED LIFE INSUR-
ANCE COMPANY, Defendant.

Civ. No. 1716.

United States District Court
N. D. Indiana,
Fort Wayne Division.

Sept. 23, 1966.

Charles B. Feibleman, Bamberger & Feibleman, Indianapolis, Ind., Robert L. Kaag, Congdon & Kaag, Fort Wayne, Ind., for plaintiff.

G. R. Redding and John L. Woolling, Baker & Daniels, Indianapolis, Ind., Gilmore S. Haynie, Livingston, Dildine, Haynie & Yoder, Fort Wayne, Ind., for defendant.

## MEMORANDUM OF DECISION AND ORDER

ESCHBACH, District Judge.

The complaint in this case alleges a class action for damages against the defendant corporation for aiding, abetting, and assisting, by its failure to report improper activities of a brokerage firm, the alleged violation by the brokerage firm of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (b), and of Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5. The alleged principal violator, Dobich Securities Corporation, was engaged in selling shares of stock in the defendant corporation, which was acting as its own transfer agent. However, according to the complaint, Dobich failed to deliver stock of the defendant corporation having a value of two million nine hundred thousand dollars ($2,900,000) before Dobich became bankrupt, having used the stock purchase money as working capital for speculation and other improper purposes and having used fraudulent misrepresentations in explaining to purchasers the reason for delays in delivery of the purchased shares of stock. The complaint alleges that the defendant knew of Dobich's activities and permitted the activities to continue by failing to report Dobich either to the Indiana Securities Commission or to the Securities and Exchange Commission. By thus permitting Dobich's activities to continue, alleges the complaint, the defendant knowingly and purposely encouraged an artificial build-up in the market for its stock. As a result of this Dobich-stimulated market, the defendant was allegedly in a more favorable position for potential mergers it was then negotiating, and certain of the defendant's officers and directors realized substantial personal profits from the sale of stock in the defendant corporation.

On January 13, 1966, the defendant filed motions (1) to dismiss for failure to state a claim upon which relief can be granted, (2) to dismiss the claim in so far as it is a class action, (3) for a more definite statement, and (4) to strike certain parts of the complaint. Extensions of time were granted to both parties for the preparation of extensive and helpful briefs on the issues raised by the motions. A hearing was held on June 9, 1966, on the two motions to dismiss, and at the close of that hearing both parties were granted additional time to file further briefs. After full consideration, this court concludes that all four motions must be denied for the reasons and in the manner hereinafter stated.

I. *Motion to Dismiss for Failure to State a Claim*

The motion to dismiss for failure to state a claim upon which relief can be granted raises basic, and not yet clearly answered, questions regarding the extent and nature of civil liability under Section 10(b) and Rule 10b–5. The defendant's primary contentions in regard to this motion are (1) that an aider and

abettor is not liable, as such, in a civil action for damages under Section 10(b) and Rule 10b–5, (2) that one cannot aid and abet the commission of a wrong unless he does so by some affirmative action or by breaching an affirmative duty to act, and (3) that the complaint does not sufficiently allege the plaintiff's reliance upon the defendant's conduct, or "some semblance of privity" between the plaintiff and the defendant, or some relationship between the plaintiff and the defendant which would show that the defendant's conduct was a proximate cause of the plaintiff's alleged damage.

■ For purposes of the motion to dismiss, the defendant concedes that the complaint sufficiently alleges a violation of Section 10(b) and Rule 10b–5 by Dobich Securities Corporation. Nor has the defendant challenged the proposition that civil liability for damages arises under the cited section and rule. Such civil liability has become well established in the twenty years since it first appeared in the landmark case of Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946). The *Kardon* doctrine has been explicitly approved and adopted in holdings of courts of appeals in five circuits—Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951); Speed v. Transamerica Corp., 235 F.2d 369 (3d Cir. 1956); Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960); Fratt v. Robinson, 203 F.2d 627, 37 A.L.R.2d 636 (9th Cir. 1953); Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961); Crist v. United Underwriters, Ltd., 343 F.2d 902 (10th Cir. 1965); by dictum of the courts of appeals in two more circuits—Beury v. Beury, 222 F.2d 464, 465 (4th Cir. 1955); Brouk v. Managed Funds, Inc., 286 F.2d 901, 906–908, 913 (8th Cir. 1961); Boone v. Baugh, 308 F.2d 711, 713–714 (8th Cir. 1962); and applied in the district courts in still two more circuits—Northern Trust Co. v. Essaness Theatres Corp., 103 F.Supp. 954, 964 (N.D.Ill.1952); Texas Continental Life Ins. Co. v. Bankers Bond Co., 187 F.Supp. 14, 23 (W.D.Ky.1960)— including the Seventh Circuit where

Judge La Buy, in the *Northern Trust Co.* case, stated,

"Without unduly lengthening this memorandum by consideration of the defendants' contentions, the court is of the opinion Section 10(b) authorizes the remedy here pursued."

The *Kardon* doctrine was impliedly approved by the United States Court of Appeals for the Seventh Circuit by its opinion in Kohler v. Kohler Co., 319 F.2d 634, 7 A.L.R.3d 486 (7th Cir. 1963). It appears that there have been no decisions rejecting that doctrine. 3 Loss, Securities Regulation 1763–1764 (2d ed. 1961).

Mindful of the fact that the issue of aider and abettor liability under the Securities Exchange Act of 1934 is here raised by a motion to dismiss and that the issue presents important questions in an expanding area of the law, and having due regard for the purposes and policies underlying the Act, it cannot be held necessarily to exclude persons who do no more than aid and abet a violation of Section 10(b) and Rule 10b–5.

In fact, the provisions of Section 10(b) and Rule 10b–5 were applied to aiders and abettors even before the first case recognizing civil liability under that statute and rule. The first case to deal with the applicability of Section 10(b) and Rule 10b–5 to aiders and abettors involved a suit by the SEC for an injunction against alleged principal violators and certain aiders and abettors. The complaint against the aiders and abettors was upheld on a motion to dismiss. The district court cited the criminal provisions making aiders and abettors responsible as principals and stated, "No good reason appears why this same rule should not apply in an injunctive proceeding to restrain a violation of the same statute." SEC v. Timetrust, Inc., 28 F.Supp. 34, 43 (N.D.Calif.1939). The court further observed that, "There is ample authority to support the validity of a suit to enjoin persons who are aiding and abetting the commission of unlawful acts."

The defendant inaccurately contends that the above-cited *Timetrust* case was

reversed on its holding that aiders and abettors could be enjoined under Section 10(b). That decision was appealed, but the appeal was dismissed on stipulation. 118 F.2d 718 (9th Cir. 1941). The district court then heard evidence and enjoined all the defendants. The granting of the injunctions against the aiders and abettors was reversed because "there is no evidence that they participated in any way" in the unlawful activity. Timetrust v. SEC, 142 F.2d 744, 746 (9th Cir. 1944). The court of appeals gave no indication that the injunctions would not have been upheld had there been evidence of the alleged aiding and abetting.

In SEC v. Scott Taylor & Co., 183 F.Supp. 904 (S.D.N.Y.1959), another suit for an injunction, the court found that a defendant actively participated in a violation of an SEC rule promulgated under Section 10(b). However, the court added a footnote, by way of dictum, that "Wholly apart from Landau's participation in [the illegal distribution], he aided and abetted the other defendants' violations * * * and is therefore liable as a principal."

In Fry v. Schumacker, 83 F.Supp. 476 (E.D.Pa.1947), the court upheld a complaint on a motion to dismiss when the complaint alleged a claim against brokers who had been employed by the principal violators to write a letter which was an essential part of a plan to defraud in violation of Section 10(b) and Rule 10b–5.

The case that is perhaps most nearly in point is Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D.N.Y.1963). This was an action for damages. The court denied motions to dismiss for failure to state a claim upon which relief could be granted and upheld that part of the complaint which, under Section 10(b) and Rule 10b–5, alleged that the defendant stock exchange and its officers aided, abetted, and assisted an illegal distribution of stock "by failing to take necessary disciplinary action" against some of its brokers who it knew or should have known were engaged in abusive conduct and practices. The complaint as upheld also included allegations that other defendants, including some banks, assisted, aided, and abetted by allowing the principal violators to open and maintain dummy accounts and by helping to conceal the true identity of traders in the plaintiff's stock. Judge Palmieri explicitly stated the basis for his holding:

"Since knowing assistance of or participation in a fraudulent scheme under Section 10(b) gives rise to liability equal to that of the perpetrators themselves, the facts alleged by the [plaintiff] trustees, if proven, would permit recovery under Section 10(b)." Pettit v. American Stock Exchange, supra, at 28.

The defendant attempts to distinguish this case upon the basis that Section 6 of the Securities Exchange Act of 1934 imposes a statutory duty upon stock exchanges to take certain disciplinary actions. However, the court did not base its decision upholding the aiding and abetting sections of the complaint under Section 10(b) on the duty of the stock exchange under Section 6. The Section 6 duty was the basis of a separate count of the complaint and was considered in a separately labeled and subsequent section of the court's memorandum. Whatever effect the Section 6 duty might have on the alleged aiding and abetting by the stock exchange, which involved no affirmative action, Section 6 would, of course, have no relevance to the alleged aiding and abetting of the other defendants.

The defendant contends that the legislative history of certain amendments proposed, but never adopted, during 1956, 1957, and 1959–1960 indicates a Congressional determination that Section 10(b) does not apply to aiders and abettors, and does not impose a civil liability in damages against persons aiding and abetting a violation of Section 10(b). This legislative history sheds little, if any, light on the Congressional understanding of the applicability of Section 10(b) to aiders and abettors. The amendments which would have given the SEC explicit power

to enjoin aiders and abettors under the Securities Exchange Act of 1934, as well as under several other Acts administered by the SEC, were part of a package of numerous amendments proposed by the SEC. This package of amendments was never fully enacted by Congress. Some of the amendments, including the aider and abettor amendments to the 1934 Act, were passed by the Senate in 1960, but were never acted on by the House of Representatives. See 1 Loss, Securities Regulations 205–206, n. 80 (2d ed. 1961).

The legislative history does indicate that the purpose of the unadopted aider and abettor amendments was "to strengthen and clarify the injunctive power" rather than to add a new element to the power of the SEC. S.Rep. No. 1757, 86th Cong., 2d Sess. 8 (1960). The SEC explained in a memorandum of its General Counsel that the amendment would "make manifest" the responsibility of aiders and abettors, Hearings on S. 1178–1182 Before a Subcommittee of the Senate Committee on Banking and Currency, 86th Cong., 1st Sess., at 276 (1959). In an official explanation of the proposed amendments, the SEC stated the purpose of the aider and abettor amendment was to "remove the ambiguity" since "there may exist some doubt as to the Commission's authority to obtain an injunction, or impose administrative sanctions, against persons aiding or abetting violations of the act." Hearings, id. at 335. The New York Stock Exchange apparently acceded to this view of the purpose of the amendment and of the SEC's injunctive power under the 1934 Act as it then read. In a statement before the Senate Subcommittee, the Exchange agreed that "this would be a reasonable clarification of the statute" and would "make it clear that an indirect violation of the act is unlawful." Hearings, id. at 54. It should also be remembered that at that time the *Timetrust, Scott Taylor,* and *Fry* cases had all been decided. If it was then generally understood that the SEC had injunctive power against aiders and abettors under the 1934 Act, as the legislative hearings on the proposed amendments indicate, the defendant here cannot successfully contend that the failure to pass the clarifying amendment shows a Congressional intent that the Act has no applicability to aiders and abettors. The SEC, in the same amendment package, had sought explicit statutory authorization for certain other items then already judicially recognized. Such requests were not included in the bill reported out of committee specifically because the committee considered such codification unnecessary. S.Rep. No. 1757, 86th Cong., 2d Sess. 9 (1960). Perhaps Congress did not act on the reported bills for the same reason.

The defendant seeks to emphasize the fact that the New York Stock Exchange opposed the particular form of the SEC's proposed aider and abettor amendment because of its fear that adding a provision merely making it "unlawful" to aid and abet a violation of the Act would not only clarify the SEC's injunctive power, but might also give rise to civil liability in damages on the part of such an aider and abettor. Hearings, supra at 54. The SEC's proposed aider and abettor amendment was to have modified Section 20(b) of the 1934 Act, and applied generally to all provisions of that Act. The Exchange proposed that the amendment modify only Section 21(e), which dealt with the SEC's injunctive power. Hearings, supra at 54. A memorandum of the SEC's General Counsel indicates that, at least originally, the SEC intended that its amendments "would make this aiding and abetting principle equally applicable to civil and administrative proceedings." Hearings, supra at 275. The SEC, however, apparently felt a stronger interest in clarifying its injunctive powers than in clarifying the extent of civil liability of aiders and abettors, since a memorandum by the Senate Subcommittee staff states:

" * * * the industry fears that private litigants, not only the SEC, may find in this section a vehicle by which to sue aiders and abettors. For

the statute does not say who can sue—it merely says 'it shall be unlawful' (to aid or abet). The courts have extended from the SEC to private plaintiffs a right of suit under a comparably general antifraud provision of the 1934 Securities Exchange Act (sec. 10(b)).

· *"Suggestions of industry agreeable to SEC.*—Make it clear that no civil liability is intended."

Hearings, supra at 370 and 288.

It should come as no surprise that "the industry" wanted to limit the liability of aiders and abettors, or that the SEC would be satisfied with a provision limited to a confirmation of its own powers. But the intent of the industry or the acquiescence of the SEC is not necessarily the intent of Congress. The SEC's proposed amendment was modified in the Senate Committee on Banking and Currency as suggested by the New York Stock Exchange. The bill, favorably reported out of committee but never passed by the Congress, would have amended Section 21(e) of the Securities Exchange Act of 1934 as follows:

"Whenever it shall appear to the Commission * * * that any person is aiding, abetting, counseling, commanding, inducing, or procuring, or is about to aid, abet, counsel, command, induce, or procure such a violation, it may in its discretion bring an action * * * to enjoin such acts or practices and to enforce compliance with this title. * * * The Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General, who may, in his discretion, institute the necessary criminal proceedings under this title."

S. 3770, 86th Cong., 2d Sess., § 20 (1960). This amendment was not enacted by Congress.

The conclusions drawn by the defendant from the legislative history of these amendments rest upon inferences drawn from Congress' inaction on the proposed aider and abettor amendments. The defendant's own line of reasoning could lead to the conclusion that Congress may have failed to enact the Senate Committee's bill because the Committee's modification was a rejection of civil liability on the part of aiders and abettors. See, e. g., the stated reason for the President's veto of amendments to the Federal Tort Claims Act in 1960. 1 U.S.Code Cong. & Ad.News, p. 1563 (1960). The more realistic view, however, is that the inferences from a mere failure to act are too elusive to provide any reliable guide to the intention of Congress. As Justice Frankfurter stated for the Court in Helvering v. Hallock, 309 U.S. 106, 119–120, 60 S.Ct. 444, 451, 84 L.Ed. 604, 125 A.L.R. 1368 (1940), "To explain the cause of non-action by Congress when Congress itself sheds no light is to venture into speculative unrealities." The courts have wisely and consistently refused to draw such speculative inferences from Congressional non-action. When considering a legislative history strikingly similar to that urged upon this court by the defendant in the instant case, Justice Jackson, speaking for the Court, stated:

"We draw, therefore, no inference in favor of either construction of the Act—from the Department's request for legislative clarification, from the congressional committee's willingness to consider it, or from Congress' failure to enact it."

Wong Yang Sung v. McGrath, 339 U.S. 33, 47–48, 70 S.Ct. 445, 453, 94 L.Ed. 616 (1950). See also, FTC v. Dean Foods Co., 384 U.S. 597, 86 S.Ct. 453, 1738, 16 L.Ed.2d 802 (June 13, 1966).

There may be many reasons why Congress fails to adopt proposed legislation. Particularly where, as in this case, an amendment is part of a package of amendments covering numerous and various aspects of securities regulation, Congress may fail to act for reasons entirely unrelated to many of the individual provisions included within that package. At the time these amendments were being considered, Congress was convened in special session late in the summer of a

Presidential election year and much proposed legislation fell victim to a lack of time. It is often difficult to determine Congressional intent from positive actions of Congress, but it is usually impossible to determine such intent from a failure of Congress to act. To draw any inferences from the action and nonaction on these proposed but unadopted amendments by Congress and its committees would indeed be a "venture into speculative unrealities."

 Aside from this legislative history, the defendant points out that there is nothing in the statute indicating a Congressional intent to impose civil liability on persons aiding and abetting violations of Section 10(b) and Rule 10b–5. But, likewise, one can search the statute in vain for language indicating that a violator of Section 10(b) and Rule 10b–5 should be liable in a civil action for damages. Such liability was developed by the courts on general principles of tort law. Judge Kirkpatrick in the *Kardon* case, supra, cited the Restatement, Torts § 286 (1939) in finding civil liability for the violation of Section 10(b). Such liability was there rested upon the maxim, Ubi jus, ibi remedium—Where there is a right, there is a remedy. This is the rationale upon which the *Kardon* doctrine has been adopted by the courts of appeals. Crist v. United Underwriters, Ltd., supra, 343 F.2d at 903–904. Appropriate general principles of law should continue to guide the development of federal common law remedies under Section 10(b) and Rule 10b–5.

Such general legal principles were the basis upon which the court in Pettit v. American Stock Exchange, supra, upheld a complaint under Section 10(b) against aiders and abettors. The court there stated that "knowing assistance of * * * a fraudulent scheme under Section 10(b) gives rise to liability equal to that of the perpetrators themselves * * *" *Pettit*, supra, 217 F.Supp. at 28. The principle has been formulated in the Restatement of Torts as follows:

"For harm resulting to a third person from the tortious conduct of another, a person is liable if he

\* \* \* \* \* \*

"(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

"(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

Restatement, Torts § 876 (1939). Such principles as stated in the *Pettit, Timetrust,* and *Scott Taylor* cases, supra, and formulated in the Restatement of Torts surely best fulfill the purposes of the Securities Exchange Act of 1934 and are a logical and natural complement to the *Kardon* doctrine.

 A basic philosophy of the Securities Exchange Act of 1934 is disclosure and is directed toward the creation and maintenance of a post-issuance securities market that is free from fraudulent practices. The investor's protection is the paramount consideration of much of the federal securities legislation and, in particular, of the 1934 Act here involved. The effect on an investor of an issuer corporation's failure to disclose improper activities of a brokerage firm dealing heavily in the issuer's stock, where the broker's activities create an appreciable risk of loss to that investor, may be just as dangerous and equally as damaging as a failure by the issuer to disclose information of its own improper activities affecting the value of its stock. The loss to the investor may well be the same. This is not to say that there is no distinction between the two types of situations, but is rather to emphasize that a statute with a broad and remedial purpose such as the Securities Exchange Act of 1934 should not easily be rendered impotent to deal with new and unique situations within the scope of the evils intended to be eliminated. In the absence of a clear legislative expression to the

contrary, the statute must be flexibly applied so as to implement its policies and purposes. In this regard, it cannot be said that civil liability for damages, so well established under the Securities Exchange Act of 1934, may never under any circumstances be imposed upon persons who do no more than aid and abet a violation of Section 10(b) and Rule 10b–5.

■■ The defendant contends, however, that aiding, abetting, and giving assistance or encouragement necessarily requires an affirmative act. Therefore, reasons the defendant, its own alleged "silence and inaction," viz., the failure to report Dobich's activities to the SEC or to the Indiana Securities Commission, could not make the defendant liable for damages caused by Dobich's wrongdoing. Such a contention, however, oversimplifies both the problem and the answer. The statute under which this action is brought imposes a duty upon persons or corporations who are in a superior position to know crucial and material facts not to take advantage of those who are not in such a position. Kohler v. Kohler Co., 319 F.2d 634, 637 (7th Cir. 1963). In the Kohler case, at page 642, the Court of Appeals for the Seventh Circuit defined the duty of "insiders" under Section 10(b) as a general principle:

> "[Section 10(b) and Rule 10b–5] basically call for fair play and abstention on the part of the corporate insider from taking unfair advantage of the uninformed outsider or minority stockholder."

The court also pointed out that such duties applied not only to "majority stockholders of corporations and corporate insiders, but equally to corporations themselves when acting through their officers, directors or agents." Kohler, supra at 638.

■ It should be noted that the general principle formulated by the Court of Appeals is not limited merely to minority shareholders, and the duty of insiders was not merely a duty to uninformed outsiders "with whom they deal." In the instant case, of course, the defendant corporation did not seek any advantage directly from the various purchasers of stock from Dobich Securities Corporation. Rather, the advantage alleged to have been desired by the defendant was to have inured to defendant by virtue of being able to assert a stronger position in merger negotiations then allegedly in progress with other persons and/or corporations. This does not mean, however, that the purchasers from Dobich were not taken "unfair advantage" of within the meaning of the Kohler case, supra. An insider can breach its duty of "fair play" to outsiders even though the advantage desired by the insider is to be gained from others. It is true that the facts which are required to be divulged in the typical insider-outsider stock transaction concern the facts of the corporation's condition which may affect the value of the stock rather than facts about a broker's improper conduct, as in the instant case. It is also true that the insider and outsider deal directly with each other in the typical case rather than entirely through an independent brokerage, as in the instant case. It does not necessarily follow, however, that the duty under Section 10(b) should be so narrowly confined. The duty of "fair play and abstention * * * from taking unfair advantage of the uninformed outsider" arises under Section 10(b) and should be construed according to the broad and general provisions of that section rather than limited to the specific facts of one case to which the duty was found applicable. The Court of Appeals indicated that the duty should not be so limited when it cautioned:

> "What are the limits of those duties? We are satisfied that the answer cannot be confined to an abstract rule but must be fashioned case by case as particular facts dictate."

Kohler, supra at 637–638.

■ Certainly, not everyone who has knowledge of improper activities in the field of securities transactions is required to report such activities. This court does not purport to find such a duty. Yet, duties are often found to

arise in the face of special relationships, and there are circumstances under which a person or a corporation may give the requisite assistance or encouragement to a wrongdoer so as to constitute an aiding and abetting by merely failing to take action. See *Pettit,* supra. The question raised by the motion at bar is whether the allegations in the complaint will permit evidence which may establish such circumstances in the instant case. This court holds that they do.

The alleged misrepresentations of Dobich certainly come within the prohibitions of Section 10(b) and Rule 10b–5. The defendant has conceded this for purposes of the motion to dismiss. The plaintiff was no less defrauded by the misrepresentations of Dobich than she would have been by misrepresentations as to the condition of the corporation and the value of the defendant's stock. The complaint alleges that the defendant knew of Dobich's conduct and alleges circumstances under which it would be possible to conclude that the defendant was an "insider" in so far as it was in a superior position to determine the nature and the propriety of Dobich's conduct. The complaint further alleges that the defendant took advantage of the artificial market for its stock in certain merger negotiations then taking place and that certain of the defendant's officers and directors took advantage of the increased stock values by selling a large number of their shares at a substantial profit.

▌ Whether or not the defendant's alleged "silence and inaction" was sufficient assistance or encouragement to constitute an aiding and abetting of Dobich's alleged violation of the statute and rule cannot be decided on the pleadings. These are questions of fact to be determined at the trial. To rest the definition of aiding and abetting solely on abstract and mechanical distinctions between active and passive assistance or to hold blindly that silence and inaction cannot constitute aiding and abetting under any possible set of circumstances would be to defeat and hamper the intelligent and responsible development of the law by subjecting it to a tyranny of labels. Where recovery may be possible, the pleadings should be upheld so that the facts can speak for themselves. In this regard the Supreme Court has stated:

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

This is not to hold that silence and inaction under all circumstances, or even under the circumstances which may be developed from the evidence in this case, constitutes aiding and abetting. This is merely to find a sufficient basis in the pleadings to permit evidence that may establish conduct which under the particular circumstances does constitute aiding and abetting. The warning by the Court of Appeals in the *Kohler* case that the extent of such duties "cannot be confined to an abstract rule but must be fashioned case by case as particular facts dictate" is most appropriate here. The very fact that this case arises in a newly developing area of law cautions that the court should refrain from abstract and premature legal determinations fashioned in an evidentiary vacuum.

▌ The defendant's remaining contentions in support of its motion to dismiss for failure to state a claim upon which relief can be granted are without merit. The complaint specifically alleges that the plaintiff relied upon the misrepresentations of Dobich, whose conduct the defendant is alleged to have aided and abetted. Likewise, the complaint specifically alleges that Dobich's conduct proximately resulted in the damages to the plaintiff and other persons similarly situated. Finally, there is no requirement of privity between plaintiffs and defendants, nor of any "semblance of privity," for recovery in Section 10(b)

actions. Miller v. Bargain City, U.S.A., Inc., 229 F.Supp. 33 (E.D.Pa.1964); Cooper v. North Jersey Trust Co., 226 F.Supp. 792 (S.D.N.Y.1963); Pettit v. American Stock Exchange, supra; Errion v. Connell, 236 F.2d 447 (9th Cir. 1956); Fishman v. Raytheon Mfg. Co., supra; Texas Continental Life Ins. Co. v. Bankers Bond Co., 187 F.Supp. 14, 24–25 (W.D.Ky.1960); 3 Loss, Securities Regulation 1767–1771 (2d ed. 1961).

## II. *Motion to Dismiss the Class Action*

During the pendency of this action, the Federal Rules of Civil Procedure have been amended. Rule 23, governing class actions, has been entirely rewritten. In its order transmitting these amendments to Congress on February 28, 1966, the Supreme Court provided that the amendments

> "shall take effect on July 1, 1966, and shall govern \* \* \* all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action then pending would not be feasible or would work injustice, in which event the former procedure applies."

383 U.S. ―― (1966). There is no reason why application of the new Rule 23 would be unjust or not feasible in this case, and counsel for both parties have so indicated in oral argument. Therefore, the amended Rule 23, effective July 1, 1966, must govern the determination of the appropriateness of this case as a class action.

 This case is maintainable as a class action under Rule 23(b) (3). The requirements of Subdivision (a) of Rule 23 are all fulfilled. There appear to be more than five hundred purchasers from Dobich who allege or may allege claims against the defendant similar to the claims alleged by the plaintiff, Tora C. Brennan. There appears to be no reason why the plaintiff will not fairly and adequately protect the interests of these purchasers. The plaintiff Brennan herself has a substantial interest in this litigation, is represented by able counsel,

and is close enough to the forum to assure convenient access during this litigation. Under Rule 23(c) (2) any member of the plaintiff's class who is not satisfied with the adequacy of the plaintiff Brennan's representation may exclude himself from this action by appropriate notification under that subdivision of Rule 23 or may, if he desires, enter an appearance through his own counsel. Rule 23(c) (2). The court itself may assure the protection of the interests of all alleged members of the class to whom notice shall be sent by appropriately describing the members of the class in its order of final judgment as provided in Subdivision (c) (3) of Rule 23.

 The determination that this action shall proceed as a class action is made in light of the present posture of this litigation. There has thus far been no pre-trial discovery, and this court has only the complaint and the papers on the instant motion to look to for guidance on the question of the appropriateness of the class action. If, however, as the case develops, it becomes apparent that the questions of fact and/or law are so dissimilar, as between members of the class represented by plaintiff, so as to render the class action unmanageable, the court has the authority under amended Rule 23(c) (1) and (d) to alter or amend its order and to either strike the class allegations from the complaint, subdivide the class, or make such other order as may be proper under the circumstances and as justice requires. That the court has this authority under the express language of amended Rule 23(c) (1) was recently confirmed by Judge Palmieri in Kronenberg v. Hotel Governor Clinton, D.C., 41 F.R.D. 42, reported August 23, 1966. *Kronenberg* involved a class action by purchasers of shares of stock alleging fraudulent misrepresentations. The court rejected the defendant's contention that the alleged misrepresentations were too varied to meet the requirement of amended Rule 23(b) (3) that there be predominating questions of law or fact common to the members of the class, and rejected the defendant's argu-

ment that the plaintiffs did not adequately represent the class, relying in both instances on the flexibility of the new rule in permitting the court's class action determination to be conditional. And the Advisory Committee's Note accompanying the new Rule 23 states that under the new rule:

"[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."

This court finds that common questions of law and fact concerning the claims of this class of plaintiffs predominate over whatever questions may variously affect only the individual members of the class. The primary legal and factual question in this case is whether the defendant aided and abetted Dobich's alleged violation of Section 10(b) and Rule 10b–5. This issue is identical as to all claimants in the plaintiff's class. Even consideration of the question whether Dobich violated the statute and rule and at what time Dobich's wrongful conduct began, if there was any violation, involves questions of fact which are essentially common to all the purchasers to whom Dobich allegedly failed to make delivery of the defendant's stock. At this posture of the litigation, there do not appear to be "material variations in the representations made or in the kinds or degrees of reliance" by the various members of the class, which the Advisory Committee's Notes to the new Rule 23 indicate would mitigate against the maintenance of a class action in a fraud case.

This does not, of course, relieve any member of the plaintiff's class from the necessity of proving all elements essential to his or her recovery. If it should subsequently appear that certain issues in this case are not appropriately determinable in a class action, the court can modify the nature of this class action and confine it to particular issues as con-

templated by amended Rule 23. Elements necessary to recovery, but not appropriate for common determination in the class action—such as, but not limited to, the amount of damages to which each individual member of the class is entitled if liability is established—will be determined separately and individually in proceedings, the nature of which can better be determined at a later date. Under the flexibility of the new Rule 23, it is not likely that the administrative difficulties will outweigh the advantage of handling in one action the similar claims of hundreds of purchasers based upon essentially similar or identical circumstances. To handle the potential litigation by several hundred separate trials would raise administrative difficulties far exceeding those present in this class action. This court also finds at this time that a class action, under the particular pleadings of this case, is superior to any other available method for the fair and efficient adjudication of the claims of the members of the plaintiff's class.

The court will direct the plaintiff to prepare a form of notice which will fulfill the requirements of Subdivision (c) (2) of Rule 23 and to present such form to the court for its approval. The plaintiff will also be directed to furnish the court the names and addresses of all alleged members of the plaintiff's class. The form of notice must inform each member of the plaintiff's class (1) that the court will exclude him from the action if he requests exclusion on or before a specified date, (2) that the final judgment in this action, whether or not favorable to the individual class member, will include all members of the class who do not request exclusion, and (3) that anyone so notified and who does not request exclusion may, if he desires, enter an appearance in this action through his counsel.

III. *Motion for More Definite Statement*

■ The nature of the information sought by the defendant in its motion for a more definite statement can ap-

propriately be obtained through the discovery procedures provided for in the Federal Rules of Civil Procedure. The complaint gives ample notice of the plaintiff's claim and is not so vague or ambiguous that the defendant cannot reasonably be required to frame an answer. Fed.R.Civ.P. 12(e). Rule 9(b) of the Federal Rules of Civil Procedure, requiring particularity in pleading the circumstances constituting an alleged fraud, is satisfied by the complaint in its present form. The complaint also makes explicitly clear that the action is based upon Section 10 of the Securities Exchange Act of 1934. The motion for a more definite statement will be denied.

IV. *Motion to Strike*

Paragraph 1 of the defendant's motion to strike is addressed to all references in the complaint which refer to this case as a class action. Since the defendant's motion to dismiss the class action is being denied, it would be inappropriate to strike the plaintiff's references to the class action.

The allegations of Paragraph 16 of the complaint, "which set out approximately 18 specifications of instances when the defendant allegedly received information from inquiring purchasers which, it is alleged, gave it notice of Dobich's violations of Section 10(b) and Rule 10b–5," are not redundant or immaterial, nor is the defendant prejudiced in any way by having such allegations included in the complaint.

The motion to strike the allegations that the defendant "should reasonably have known" or "should have known" in Paragraphs 16(h) and 19 of the complaint and the request for attorneys fees will be denied with leave to raise these issues at the pre-trial conference.

### ORDER

The defendant's motion to dismiss the action for failure to state a claim is denied.

The defendant's motion to dismiss the class action is denied. The plaintiff is directed to prepare a form of notice which will fulfill the requirements of Subdivision (c) (2) of Rule 23 as discussed in the foregoing Memorandum of Decision and to present such form of notice to the court for its approval. The plaintiff is also directed to furnish the court the names and addresses of all alleged members of the plaintiff's class.

The defendant's motion for a more definite statement is denied.

The defendant's motion to strike certain portions of the complaint referring to the class action and to strike Paragraph 16 of the complaint is denied. The defendant's motion to strike the allegations referring to the defendant's alleged state of knowledge and to strike the plaintiff's request for attorneys fees is denied with leave to raise these issues again at the pre-trial conference.