Victor M. CANNON, Jr., Plaintiff,
and

Daniel M. Feeley et al., Plaintiffs-
Intervenors,

v.

TEXAS GULF SULPHUR COMPANY
et al., Defendants.

Donald M. GREEN et al., Plaintiffs,

v.

TEXAS GULF SULPHUR COMPANY
et al., Defendants.

Nos. 65 Civ. 1223, 65 Civ. 3114.

United States District Court
S. D. New York.

March 20, 1969.

Lipper, Richard B. Dannenberg, New York City, Lowell Sachnoff, William Weaver, Chicago, Ill., Stephen Lowey, New York City, of counsel.

White & Case, New York City, for defendant Texas Gulf Sulphur Co.; Orison S. Marden, William D. Conwell, P. B. Konrad Knake, Thomas McGanney, New York City, of counsel.

Philip A. Loomis, Jr., Donald M. Feuerstein, Harvey A. Rowen, for Securities and Exchange Commission, Washington, D. C., and New York Regional Office, New York City.

## OPINION

BONSAL, District Judge.

Plaintiffs in these two actions (moving plaintiffs) move, pursuant to Rule 23, F.R.Civ.P., for an order declaring that their respective actions may be maintained as class actions.[1]

The class which the moving plaintiffs seek to represent would consist of all those shareholders of Texas Gulf Sulphur Company (TGS) common stock (TGS stock) on April 12, 1964, who sold their stock, between April 12 and April 16 at approximately 10 A.M., in reliance on a press release issued by TGS on April 12, 1964 (the April 12 press release).

These Rule 23 motions were originally made in November 1967, but it was agreed by stipulation between attorneys for moving plaintiffs and attorneys for defendants that the hearing of these motions would await the outcome of the appeal from this court's decision in S.E.C. v. Texas Gulf Sulphur, 65 Civ. 1182, reported at 258 F.Supp. 262 (S.D.N.Y. 1966). The Court of Appeals for the Second Circuit determined the appeal in S.E.C. v. Texas Gulf Sulphur Co. on August 13, 1968, reported at 401 F.2d 833 (2d Cir. 1968) (hereinafter, the S.E.C.'s action).

Lipper, Keeley, Katcher, Lowey & Dannenberg, New York City, for plaintiffs and plaintiff-intervenors; Epstein, Manilow & Sachnoff, Chicago, Ill., Aaron

---

1. Moving plaintiffs have stated that, if their Rule 23 motions are granted, they will move to consolidate their actions.

After the Court of Appeals' decision, attorneys for moving plaintiffs requested that the court hold a conference to discuss the bringing on of their Rule 23 motions.

On September 19, 1968, the court held a conference with attorneys for moving plaintiffs, for defendants, and for the Securities and Exchange Commission (the S.E.C.), at which time attorneys for moving plaintiffs stated that they wished to renew their Rule 23 motion. At the September 19 conference, it was agreed to have a hearing on moving plaintiffs' Rule 23 motion and to give notice to all attorneys for plaintiffs who would be affected.[2]

On October 30, 1968, the court held a hearing at which attorneys for plaintiffs in 13 of the actions which would be affected by the motion were present. Of these, attorneys for plaintiffs in three of them stated that they supported the Rule 23 motion; attorneys for plaintiffs in eight of them opposed the Rule 23 motion; and attorneys for plaintiffs in two of them expressed no opinion.[3]

Of the 13 actions, nine cover the April 12–16 period; of the eight actions in which attorneys expressed opposition to the Rule 23 motion, four cover the April 12–16 period.[4]

The attorneys opposing the class actions stated that the factual background in all of the actions would be essentially the same; that it would be artificial to separate the actions into two classes; and that the motion should await a final determination of the proceedings in the S.E.C.'s action. The attorney for the S.E.C. stated that the Commission recommended that the court declare the actions covering the April 12–16 period a consolidated class action and grant moving plaintiffs' Rule 23 motion.

## I. RULE 23 REQUIREMENTS

In order to proceed as a class action, moving plaintiffs must satisfy all the requirements of Rule 23(a), F.R.Civ.P., which provides that

"One or more members of a class may sue * * * as representative parties on behalf of all only if (1) the class is

---

2. Notices of the hearing were sent by attorneys for moving plaintiffs to attorneys of plaintiffs in all actions filed against defendants, which plaintiffs alleged in their complaints that they sold TGS stock either in the April 12 to April 16, 1964 period, or in the period before April 12 and in the April 12 to April 16 period. Of the approximately 59 actions filed against defendants, approximately 26 of them are actions covering the April 12 to April 16 period.

3. The attorneys who supported the Rule 23 motion represented plaintiffs in the following actions:
    (1) Brynin v. Texas Gulf Sulphur et al., 65 Civ. 1718
    (2) Moran v. Coates et al., 65 Civ. 2666
    (3) MacIver v. Texas Gulf Sulphur, 65 Civ. 2992

    The attorneys who opposed the Rule 23 motion represented plaintiffs in the following actions:
    (1) Jahss v. Texas Gulf Sulphur et al., 65 Civ. 3230
    (2) Bieber v. Texas Gulf Sulphur, 65 Civ. 1237

    (3) Moore v. Texas Gulf Sulphur et al., 65 Civ. 268
    (4) Colonial Realty Corp. v. Coates et al., 65 Civ. 2106
    (5) Fink v. Coates et al., 65 Civ. 2105
    (6) Marmon v. Texas Gulf Sulphur et al., 65 Civ. 1371
    (7) Weinberger v. Texas Gulf Sulphur et al., 65 Civ. 1583
    (8) Marchesano v. Texas Gulf Sulphur et al., 65 Civ. 1816

    The attorneys who expressed no opinion as to the Rule 23 motion represented plaintiffs in the following actions:
    (1) Sam Houston Life Insurance Co. v. Texas Gulf Sulphur et al., transferred from the United States District Court for the Southern District of Texas
    (2) Wells v. Texas Gulf Sulphur et al., 65 Civ. 2424

4. The nine actions covering the April 12 to April 16 period are *Brynin, Moran, MacIver, Jahss, Colonial Realty Corp., Weinberger, Sam Houston Life Insurance Co., Wells,* and *Marchesano.*

so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims * * * of the representative parties are typical of the claims * * * of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

In addition, moving plaintiffs must satisfy one of the requirements of Rule 23 (b). Moving plaintiffs contend that their action satisfied Rule 23(b) (3), which provides that

"An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

* * * * * *

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. * * * "

### Joinder of all members is impracticable

Moving plaintiffs contend that there are sellers of in excess of 364,000 shares of TGS stock who are potential class members. Of the 59 or more private actions which have been instituted against defendants herein, approximately 26 of them, involving about 250 plaintiffs, cover the April 12–16 period. Although "mere numbers" should not be the sole "guideline on the practicability of joinder," DeMarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968), Fidelis Corporation v. Litton Industries, Inc., 293 F. Supp. 164 (S.D.N.Y. 1968), these figures indicate that joinder of all members of the class would clearly be impracticable.

### Common questions of law or fact

Moving plaintiffs contend that some of the common questions of law or fact involved here include the factual background of TGS' explorations in Timmins; the preparation of the April 12 press release; the standard of recovery in a Rule 10b–5 action for damages. There are common questions of law and fact with respect to stockholders who claim they sold TGS stock between April 12 and April 16 in reliance on the April 12 press release.

### Claims typical of the class

The requirement that the representatives of the class have claims which are "typical of the claims * * * of the class" has been construed to mean that the representatives must not have interests antagonistic to or in conflict with those they seek to represent. Mersay v. First Republic Corporation, 43 F.R.D. 465 (S.D.N.Y.1968). The Court of Appeals in Green v. Wolf Corporation, 406 F.2d 291 (2d Cir. December 9, 1968), has broadly construed this requirement in light of the trial court's ability to "make use of the flexibility available to it and so important to the proper application of Rule 23." In this case, the issues to be tried are quite narrow and there are no apparent conflicts between the moving plaintiffs and other class members.

### Fair and adequate protection of interests of class

Moving plaintiffs contend that they will protect the interests of the class. In Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968), the Court of Appeals stated:

" * * * an essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class."

In this case, there are no indications that moving plaintiffs' attorneys do not satisfy these requirements or that moving plaintiffs have interests antagonistic to those of the remainder of the class.

*Common questions predominate; class action is superior*

■ The common question involved in all actions covering the April 12–16 period is whether the April 12 press release was recklessly prepared, so as to be "equivalent to wilful fraud." Of course, reliance on the April 12 press release will have to be proved by each member of the class, but as the Court of Appeals stated in Green v. Wolf Corporation, *supra*,

"We see no sound reason why the trial court, if it determines individual reliance is an essential element of the proof, cannot order separate trials on that particular issue, as on the question of damages, if necessary. The effective administration of 23(b) (3) will often require the use of the 'sensible device' of split trials."

The second requirement of Rule 23(b) (3) is that the class action be "superior to other methods available for a fair and efficient adjudication of the controversy." Rule 23(b) (3) also provides that

"The matters pertinent to the findings [of the superiority of the class action device] include: (A) the interest of members of the class in individually controlling the prosecution * * * of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by * * * members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

After considering these matters, the court concludes that the class action device is the superior method of adjudicating the controversy involved here. In Green v. Wolf Corporation, *supra*, the Court of Appeals stated that the "relevant question to consider * * * is the number injured by the alleged violation of 10b–5." Here, as indicated earlier, as many as 250 plaintiffs have already instituted actions against defendants, and sellers in excess of 364,000 shares of TGS stock are potential members of the class.

Although there was disagreement among attorneys for plaintiffs in the 13 private actions who appeared at the October 30 hearing, any plaintiff not desiring to participate in the class action may opt out of the class under Rule 23 (c) (2), (3).

For reasons stated, the court finds that moving plaintiffs have satisfied all requirements of Rule 23(a) and Rule 23 (b) (3), F.R.Civ.P.

## II. POSSIBILITY OF SUCCESS

It was conceded by the parties at the October 30 hearing that the moving plaintiffs have the burden to show that the April 12 press release was prepared with a "reckless disregard for the consequences * * * or an outright, wilful misrepresentation because of fraudulent motives." (October 30 Hearing, p. 79.) As stated by Judge Friendly in his concurring opinion in S.E.C. v. Texas Gulf Sulphur, 401 F.2d at 866, 868,

"The consequences of holding that negligence in the drafting of a press release such as that of April 12, 1964, may impose civil liability on the corporation are frightening. * * * it is at least clear that the April 12 press release would be the worst possible case for the award of damages for merely negligent misstatement, as distinguished from the kind of recklessness that is equivalent to wilful fraud * * *."

Judge Friendly's view was concurred in by Judges Kaufman and Anderson of the majority.

Although the Court of Appeals subsequently indicated that the issue of whether negligence absent a showing of bad faith would suffice in a private suit for damages under Rule 10b–5 was still open, see Heit v. Weitzen, 402 F.2d 909, 913 (2d Cir. 1968), the court is guided by the views expressed in S.E.C. v. Texas Gulf Sulphur, *supra.*

Attorneys for moving plaintiffs stated at the October 30 hearing that they wished to proceed with discovery in order to establish facts with respect to the issuance of the April 12 press release.

After considering the views of the parties at the hearing, the court noted that Judge Friendly in his concurring opinion in S.E.C. v. Texas Gulf Sulphur, *supra,* had said that "No one has asserted, or reasonably could assert that the purpose of issuing [the April 12 press] release was anything but good"; and further noted that all parties at the hearing conceded that, if the Rule 23 motion was granted, satisfying the notice requirements could not "be anything but quite burdensome and quite expensive." Accordingly, the court asked that additional discovery be undertaken by attorneys for moving plaintiffs to determine whether there was a substantial possibility that moving plaintiffs would succeed on the merits at a trial. See Dolgow v. Anderson, 43 F.R.D. 472, 501–502 (E.D.N.Y.1968).

Thereafter, attorneys for moving plaintiffs noticed and took the depositions of David M. Crawford, Secretary of TGS, on December 11, 1968; of Claude Stephens, Chairman of the Board of Directors of TGS, on December 12, 1968; and of Charles F. Fogarty, President of TGS, on December 13, 1968. Notices of these depositions were sent to attorneys for plaintiffs in all the actions covering the April 12–16 period.

Before taking the depositions, attorneys for the defendants supplied the attorneys for moving plaintiffs with the following:

1. a complete transcript of the trial in S.E.C. v. Texas Gulf Sulphur;

2. documents received in evidence or marked for identification at the trial in S.E.C. v. Texas Gulf Sulphur;

3. documents produced by TGS for examination by the S.E.C. and by plaintiffs in other actions;

4. transcripts and exhibits in four cases tried in the United States District Court for the District of Utah;

5. transcripts of hearings in certain derivative actions brought by stockholders of Curtis Publishing Company (Curtis) against TGS and others;

6. transcript of trial in Leitch Gold Mines, Ltd. v. Texas Gulf Sulphur, concerning TGS' activities in Canada, including Timmins.

The testimony of the three officers of TGS taken in December 1968 did not add materially to their testimony given at the trial of the S.E.C. action except to bring out that at the time of the April 12 press release, negotiations were pending between TGS and the Royal Trust Company, acting for the Hendrie Estate, for the purchase by TGS of a 10% overriding royalty previously given on property involved in the Timmins operation, at a price of $57,000, which purchase was not consummated.

Moving plaintiffs contend primarily that the April 12 press release was purposely written in a "gloomy and misleading" manner in order to benefit TGS in its negotiations with the Hendrie Estate for the release of the 10% override provisions.

At the October 30 hearing, the court asked the moving plaintiffs to adduce evidence of the possibility of success at trial, Dolgow v. Anderson, *supra.* However, Judge Metzner, in Mersay v. First Republic Corporation of America, supra, 43 F.R.D. at 469, held that such a requirement "would deprive the plaintiff and the class of the right to a jury trial * * * [and] turn rule 23 into a cum-

bersome procedure." And, in Green v. Wolf Corporation, supra, 406 F.2d at 301, the Court of Appeals indicated that such a hearing would be "redundant" where the plaintiff had brought a Rule 10b–5 class action for damages and had offered to pay for the costs of sending notices.

In Green v. Wolf Corporation, supra, 406 F.2d at 298, the Court of Appeals also stated that, of the alternatives of

"allow[ing] a 10–b–5 suit to proceed as a class action, with the possibility that its order might be amended later to strike the class action or to create subclasses"

as in Brennan v. Midwestern United Life Ins. Co., 259 F.Supp. 673 (N.D.Ind.1966), or of

"[denying] a class action * * * with the possibility of reinstating it after it had progressed further"

as in Richland v. Cheatham, 272 F.Supp. 148 (S.D.N.Y.1967),

"we believe Brennan follows the better route, since once the class action aspect is struck, the litigation is likely to terminate."

The court will follow the preference indicated by the Court of Appeals and will conditionally grant the Rule 23 motion and then direct a hearing on the necessary notice to the class.

The only remaining matter to be discussed is how the moving plaintiffs may satisfy the notice requirements of Rule 23(c) which, because this action qualified as a class action under Rule 23(b) (3), requires that

"(2) * * * the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. * * *"

Moving plaintiffs will settle an order fixing the date for a hearing to determine the best practicable notice to the members of the class pursuant to Rule 23(c) (2), and notice of such hearing will be sent to all attorneys who appeared at the hearing on October 30, 1968.

Moving plaintiffs' motion under Rule 23, F.R.Civ.P., for an order declaring that their respective actions may be maintained as a class action, which class would consist of all those shareholders who claim they sold TGS stock, between April 12 and April 16, in reliance on the April 12 press release, is conditionally granted.

Settle order on notice.