George Gordon **REYNOLDS**, Plaintiff,

v.

**TEXAS GULF SULPHUR COMPANY**, a Texas Corporation, and Charles F. Fogarty, Defendants.

No. C 132–66.

United States District Court
D. Utah, C. D.

Jan. 13, 1970.

See also D.C., 309 F.Supp. 548.

---

Parker M. Nielson, A. Reed Reynolds, Salt Lake City, Utah, for plaintiff.

Calvin A. Behle, Salt Lake City, Utah, and White & Case, New York City, for defendants.

## MEMORANDUM AND ORDER DENYING MOTION FOR CLASS ACTION

RITTER, Chief Judge.

## ORDER DENYING MOTION OF PLAINTIFF FOR THE ENTRY OF ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING CLASS ACTION

The Court, having heard oral arguments of counsel for the parties and of counsel for persons appearing *amicus curiae*, on two occasions, relative to plaintiff's Motion for the Entry of Additional Findings of Fact and Conclusions of Law Concerning Class Action, and having read and considered memoranda supplied by all parties and persons concerned, and being fully advised in the premises, upon the grounds and for the reasons set forth at some length in the following Memorandum,

It is ordered, that the motion be, and the same hereby is denied.

## MEMORANDUM IN SUPPORT OF ORDER DENYING MOTION OF PLAINTIFF FOR ENTRY OF ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW PERMITTING HIM TO PROCEED UNDER RULE 23

This is the third time plaintiff Reynolds has sought an order that this case may be maintained as a class action.

His first motion was denied after full hearing on February 2, 1967, and on February 6 a formal order was entered pursuant to Rule 23(d) (4) denying the motion and directing "that portion of plaintiff's complaint averring the existence of a proper class action is hereby dismissed with prejudice." Pertinent portions of that Order read:

"1. That plaintiff failed to sustain the burden of producing facts which would justify a determination by the court that the above entitled action is a proper class action as required by Rule 23 of the Federal Rules of Civil Procedure, as amended.

"2. That numerous actions involving similar issues of fact and law have heretofore been filed and are now pending before the United States District Court in the Southern District of New York, 32 of which actions purport to be class actions.

"3. That all of said actions on file in the Southern District of New York have been assigned to a single judge for discovery and for trial.

"4. That in addition to private actions on file in the United States District Court for the Southern District of New York, there is also pending a suit brought by the Securities and Exchange Commission against the defendants in this action and others arising from the same conduct on the part of defendants and involving similar issues of fact and law as are

present in the various private actions; that said action by the SEC has been tried and that the trial court ruled that such conduct of the defendants did not violate the provisions of Section 10(b) of the Securities Exchange Act of 1934 or of Rule 10b–5 promulgated pursuant thereto; that said action by the SEC is now pending on appeal before the United States Court of Appeals for the Second Circuit and has been set for hearing for oral argument in the month of March, 1967; and that the various private actions now pending in the State of New York are being held in abeyance voluntarily by the respective parties pending the decision of the Court of Appeals in the SEC case.

"5. That a determination that this action is a proper class action would unduly complicate the pending litigation described above.

"6. That if the various private suits are to be concentrated for trial in a single forum, they should be concentrated in the Southern District of New York and not in this District.

"7. That substantial difficulties would be encountered in attempting to manage the proposed class action from this District.

"8. That discovery sufficient to identify members of the proposed class would be extremely time-consuming and expensive. The number of such members appears to be in the thousands, most of whom reside in the East and few, if indeed any, other than plaintiff in Utah."

The propriety of a class action was considered a second time on September 29, 1967 when this court granted defendants' motion to dismiss the class action allegations in the consolidated cases, and on October 12, 1967 a second order was entered "That all averments and references to class actions in the complaints of the consolidated cases be and the same are hereby stricken." At no time thereafter prior to trial or prior to this court's decision on the merits did plaintiffs seek to reargue or renew their motions nor seek leave to appeal this court's determinations on the point. The action proceeded solely on the basis that it was to determine the rights of the named plaintiffs, and their rights alone.

For the third time, and at this late date, and in the form of a "Motion for the Entry of Additional Findings of Fact and Conclusions of Law Concerning Class Action", plaintiff Reynolds "prays that a time be set for the further hearing of counsel with respect to the question of the class action proceedings * * * the court vacate its order of October 12, 1967, striking the allegations of a class action, order that this action be maintained as a class action and enter findings of fact and conclusions of law with respect thereto in the form attached hereto."

Plaintiff Reynolds seeks to represent the class of all sellers from April 13 to April 16, both inclusive. On April 13, 1964, there were 126,500 shares of Texas Gulf stock sold on the New York Stock Exchange; on April 14, there were 76,900 shares sold; on April 15, there were 43,800 shares sold; on April 16, there were 444,200 shares sold; the total shares sold on these four dates is 691,400. There would necessarily be several thousand members of the alleged class. Each of those persons would eventually have to be deposed, produce documents and prove his individual case on causation, reliance and damages. There can be no question but that there were differences in the kinds and degrees of reliance by the persons to whom the April 12 release was addressed, as demonstrated by plaintiffs Reynolds, Mitchell and Stout. There were material variations in the manner in which the April 12 press release was conveyed to the investing public.

Pre-trial discovery and actual testimony would be necessary before there could be recovery.

In my judgment, as I have said before, if these various private suits are to be concentrated for trial in a single

forum they should be concentrated in the Southern District of New York and not in this District. Among other reasons, an important one is that the bulk of this litigation is already there.

The Securities and Exchange Commission had commenced in New York its suit in equity against Texas Gulf Sulphur on April 19, 1965, more than a year before the Reynolds suit was instituted. Judge Dudley Bonsal decided the case against the Commission in August of 1965. The Commission appealed and the Second Circuit determined to hear it *en banc.*

The decision of the Second Circuit came down August 3, 1968, reversing the District Court. The Second Circuit did not determine that Texas Gulf's April 12 press release violated the securities laws. Rather it remanded:

> "Accordingly, we remand this issue to the district court that took testimony and heard and saw the witnesses for a determination of the character of the release in the light of the facts existing at the time of the release, by applying the standard of whether the reasonable investor, in the exercise of due care, would have been misled by it." (401 F.2d 833, 863).

If this question were resolved against Texas Gulf, the District Court would be required on remand then to determine whether the release was issued as a result of "a lack of due diligence" on the part of Texas Gulf. The trial of these issues was held before Judge Bonsal on October 6, 7 and 8, 1969. The opinion has not yet come down.

The Second Circuit has indicated some guide lines to the New York District Court.

On October 22, 1969, in addition to the SEC suit, 94 other actions had been brought in New York against Texas Gulf and individual defendants. All told there were more than 500 named plaintiffs seeking damages in the sale of 150,000 shares of Texas Gulf stock during the period November 12, 1963 through April 16, 1964. Named plaintiffs in the cases then pending before Judge Bonsal who sold in the period April 13 through April 16, both inclusive, claim damages on sales of approximately 29,000 shares of Texas Gulf stock. (Affidavit of Orison S. Marden, filed October 27, 1969.)

In two actions in the Southern District of New York Judge Bonsal, on March 20, 1969, ruled that the cases might proceed as class actions. These cases are Cannon v. Texas Gulf (and Green v. Texas Gulf), 47 F.R.D. 60 (S.D. N.Y.1969).

In the *Cannon* action 20 named plaintiffs claimed damages on sales of 4,020 shares of Texas Gulf stock during the period April 12, 1964 through April 16, 1964, and in the companion action of Green v. Texas Gulf Sulphur Co., 26 plaintiffs claimed to have sold a total of 4,453 shares of Texas Gulf Sulphur Company stock during that period in reliance upon the Company's April 12 press release. At the October 30, 1968 hearing on the motion for class action, attorneys for plaintiffs in some 59 actions had the opportunity to be heard. (Affidavit of Orison S. Marden.)

Following Judge Bonsal's ruling in the *Cannon* and *Green* cases, the attorneys began the necessary steps to identify the members of the class they claimed to represent. Discovery procedures commenced April 15, 1969 revealed that Texas Gulf did not have any records which could identify the class.

Thereafter, plaintiffs' attorneys began the tedious and time consuming procedure of identifying potential plaintiffs described in the Marden affidavit:

> "They deposed the Stock Clearing Corporation in New York on May 2, 1969. The Stock Clearing Corporation produced the Daily Reconciliation Lists for cleared trades in the common stock of Texas Gulf Sulphur Company for the dates of April 13, 14, 15 and 16, 1964. These records, compiled from the trade information submitted by the various Purchase and Sales Departments of the clearing member organizations, matches

[sic] the purchasing broker's records. This information is then reproduced by computer to allow the clearing members to affect [sic] deliveries of Texas Gulf stock.

"The records of the Stock Clearing Corporation which were produced consisted of 69 computer print-out sheets which recorded the transactions on those four trading days. In code it lists the selling broker, the purchasing broker, the number of shares in each transaction, the price per share and total price of the trade. Approximately 3900 separate transactions are recorded, all transactions involving lots of 100 shares or more.

"The next step in attempting to find and identify the sellers of stock during this period is to depose or otherwise obtain the necessary identifying information from the various clearing brokerage houses, of which there are more than 225, in order to discover for whom each brokerage house was acting. Of course, many of the transactions are sales by the odd-lot houses, acting as agents for several different persons as to each 100 share sale. The Stock Clearing Corporation produced the code for the brokerage houses. We have not ascertained how many of these were involved in transactions in Texas Gulf stock, but they are numerous. We do not know what steps have yet been undertaken by counsel for plaintiffs in *Cannon* and *Green* in this direction, but it is likely that this has not begun. It is the necessary next step in order to determine who the members of the class are, but we believe they have not gone ahead because of pending motions by defendants for summary judgment, raising questions of law which have not yet been passed upon by Judge Bonsal."

The pending motions in 60 actions for summary judgment referred to by Mr. Marden in his affidavit sworn to on October 22, 1969, and filed here October 27, were ruled on by Judge Bonsal October 31, 1969. Astor, et al. v. Texas Gulf Sulphur Co., et al.; Alexander, et al. v. Texas Gulf Sulphur Co., et al.; Darraugh, Jr., et al. v. Coates, et al. (CCH Fed.Sec.L.Rep. paragraph 92,501)

A hearing was held in the *Cannon* and *Green* cases on December 8, 1969, at which time Judge Bonsal directed counsel to settle an order to obtain information from the brokers referred to above by Mr. Marden as to who are the members of the class, and Judge Bonsal considered the kind of notice to be sent out to the members of the class.

In reaching a judgment upon this motion, the foregoing facts have been considered with Rule 23(b) (3) (B) in mind, particularly clauses: (B) The extent and nature of any litigation already commenced by members of the class. (C) The desirability or undesirability of concentrating the litigation in the particular forum. (D) The difficulties likely to be encountered in the management of a class action in Salt Lake City.

The application of these provisions of Rule 23 to the facts and circumstances herein outlined seem to the Court particularly appropriate. The litigation in New York is far advanced, far and away the bulk of the cases are there, and the information necessarily to be obtained from the brokerage offices is more readily and more conveniently available in New York City.