Victor M. CANNON, Jr., Donald M. Green et al., on behalf of themselves and all similarly situated sellers of defendant Texas Gulf Sulphur Company common stock between April 12, 1964 and April 16, 1964, Plaintiffs,

and

Daniel M. FEELEY et al., Plaintiff-Intervenors,

v.

TEXAS GULF SULPHUR COMPANY et al., Defendants.

No. 65 Civ. 1223.

United States District Court, S. D. New York.

June 8, 1971.

See also 323 F.Supp. 990.

Lipper, Keeley, Katcher, Lowry & Dannenberg, New York City, and Sachnoff, Schrager, Jones & Weaver, Chicago, Ill., for plaintiffs and plaintiff-intervenors; Richard B. Dannenberg, New York City, Lowell E. Sachnoff, Chicago, Ill., of counsel.

Leibowitt, Milberg, Weiss & Fox, New York City, for plaintiff William B. Weinberger, Lawrence Milberg, New York City, of counsel.

Cadwalader, Wickersham & Taft, New York City, George Reycraft, New York City, of counsel, and Parker M. Nielson, A. Reed Reynolds, Salt Lake City, Utah, for plaintiff Margaret E. Wright.

Nemser & Nemser, New York City, for plaintiffs in Charles Jagerman, et al. v. Texas Gulf Sulphur Company, et al., 65 Civ. 2348, Stanley Nemser, Norman Nemser, New York City, of counsel.

White & Case, New York City, for defendants; Orison S. Marden, P. B. Konrad Knake, Jr., Thomas McGanney, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

In this consolidated action, which has been determined conditionally to be a class action on behalf of

"all former shareholders of the common stock of Texas Gulf Sulphur Company who claim they sold their stock between April 12, 1964 and 10:55 A.M. on April 16, 1964 in reliance upon the April 12, 1964 press release, issued by Texas Gulf Sulphur Company, relating to exploratory activities at Timmins, Canada",[1]

plaintiffs move, pursuant to Rule 23(c)(1), F.R.Civ.P., for an order declaring that a class action may also be maintained on behalf of all former shareholders of Texas Gulf Sulphur Company ("TGS") who allege they sold their stock *after* 10:55 A.M. on April 16, 1964 and before noon on April 17, 1964, in reliance upon the April 12 press release (hereinafter referred to as "post-10:55 A.M. reliance sellers").

This action arises out of events of November 1963 through April 1964 when TGS discovered valuable ore bodies in Timmins, Ontario.[2] It was instituted by former shareholders of TGS, who allege in their complaints that TGS and certain of its officers and directors issued the April 12 press release and that the press release was knowingly false and misleading as to material facts, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated pursuant thereto.

In Weinberger v. Texas Gulf Sulphur Company, et al., 65 Civ. 1583, plaintiff, suing "on behalf of himself and all others similarly situated," moved that his action be determined a class action, alleging in his moving papers that he sold 100 shares of TGS stock at $34.75 per share after 10:55 A.M. on April 16. Thereafter, *Weinberger*, insofar as plaintiff alleged reliance on the April 12 press release, was consolidated with this action and Weinberger's original motion has been espoused by the plaintiffs in this consolidated action.

In support of this motion, plaintiffs state that at least 500,000 shares of TGS stock were traded between 10:55 A.M. on April 16 and noon on April 17, indicating that the class is so numerous as to warrant a class action. However, the proposed class would include only those who sold in reliance upon the April 12 press release and without knowledge of TGS's ore discovery announced in a press release on the morning of April 16, 1964. The April 16 press release was issued at a press conference held between 10:00 and 10:15 A.M. The news appeared on Merrill Lynch's private wire at 10:29 A.M. and on the Dow Jones Broad Tape in offices of brokerage houses throughout the country at 10:54 A.M. The first three paragraphs of the Dow Jones wire, which were concluded by 10:55 A.M., read as follows:

"TEXAS GULF SULPHUR

"N Y—DJ—TEXAS GULF SULPHUR CO. SAID ITS ORE DISCOVERY IN ONTARIO IS—A MAJOR DISCOVERY OF ZINC COPPER AND SILVER—

the Second Circuit Court of Appeals (401 F.2d 833, at 840–841, 843–847 (2d Cir. 1968)); in the opinion of the District Court of Utah (Reynolds v. Texas Gulf Sulphur Co., 309 F.Supp. 548, at 551–556 (D.Utah 1970); and in the opinion of the Tenth Circuit Court of Appeals (446 F.2d 90 at 93–95 (10th Cir. Apr. 26, 1971)).

1. Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60 (S.D.N.Y.1969) and orders filed November 10, 1969 and June 19, 1970.

2. These events are not detailed here since they are set forth in the opinion of this Court (S. E. C. v. Texas Gulf Sulphur Co., 258 F.Supp. 262, at 268–275, 293–294 (S.D.N.Y.1966); in the opinion of

"AT A SPECIAL PRESS CONFERENCE CLAUDE O STEPHENS PRESIDENT SAID—THIS IS A MAJOR DISCOVERY—PRELIMINARY DATA INDICATE A RESERVE OF MORE THAN 25 MILLION TONS OF ORE—THE ONLY HOLE ASSESSED SO FAR REPRESENTS OVER 600 FEET OF ORE INDICATING A TRUE ORE THICKNESS OF NEARLY 400 FEET—

"IN DESCRIBING THE FINDINGS OF THE ONE DRILL HOLE MR· STEPHENS SAID THAT—THE OVERALL INTERVAL OF MINERALIZATION WHICH COULD BE MINED IN AN OPEN PIT OPERATION AVERAGED 1 18 PC COPPER 8 1–10 PC ZINC and 3 8–10 OUNCES OF SILVER OVER A CORE LINK OF 602 FEET—"

News of the discovery was carried in the financial press and in newspapers throughout the country. Following the announcement, the price of TGS stock, which had closed the night before at 29⅜, rose to a high of 37 and closed at 36⅜. The opening trade on April 17 involved 125,000 shares at a price of 39¾, up more than 3 points over the close of the previous day. Later in the morning of the 17th, trading was suspended for a time and resumed at 1:47 P.M. at a price of 42.

This market performance makes it clear that substantially all of the trades after 10:55 A.M. were made in the light of the April 16 press release. This is borne out by the fact that in 30 pending actions in this Court involving 128 plaintiffs who allege that they sold their TGS stock in reliance on the April 12 press release, only 11 plaintiffs allege they sold after 10:55 A.M. on April 16. In view of the vast publicity given to TGS's discovery and to the litigation which followed, the small number of suits involving post-10:55 A.M. sales satisfies the Court that very few former shareholders would come within the proposed class.

Plaintiffs argue that it is not uncommon for a class action to proceed with only a few plaintiffs, or indeed only a single plaintiff, relying on Green v. Wolf Corporation, 406 F.2d 291 (2d Cir. 1968), cert. denied 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968); and Epstein v. Weiss, 50 F.R.D. 387 (E.D.La.1970). In those cases, however, the issue presented was whether the plaintiff or plaintiffs would fairly and adequately protect the interests of *an admittedly numerous* class (Rule 23(a) (4)). In this case, plaintiffs have made no showing that the proposed class is, in fact, numerous (Rule 23(a) (1)). The evidence in the record as to the size of the class is pure speculation. Under the circumstances, where plaintiffs have failed to make a positive showing of numerosity, a class action is not properly maintainable. DeMarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968).

Plaintiffs urge this Court, however, to resort to the procedure suggested in Green v. Wolf Corporation, *supra,* 406 F.2d at 298, n. 10, of "allow[ing] a 10–b–5 suit to proceed as a class action, with the possibility that its order might be amended later to strike the class action or create subclasses." This Court followed that suggestion when it conditionally granted plaintiffs' motion for a class action on behalf of pre-10:55 A.M. reliance sellers (Cannon v. Texas Gulf Sulphur Company, *supra*). Plaintiffs would have the Court require the transmission of a questionnaire to all sellers of TGS stock between 10:55 A.M. on April 16 and noon on April 17 to determine whether, on the basis of the number of responses indicating sales in reliance upon the April 12 press release and without knowledge of TGS's ore dis-

covery, the action should be continued as a class action on behalf of post-10:55 A.M. reliance sellers. While questionnaires were utilized in Korn v. Franchard Corporation, 50 F.R.D. 57 (S.D. N.Y.1970), that action "appear[ed] on the surface to meet the requirements of Rule 23" (*Id.* at 58). Here plaintiffs have failed to satisfy the requirements of Rule 23(a), and class treatment, whether conditional or not, is inappropriate. *Compare*—Green v. Wolf Corporation, *supra*; Korn v. Franchard Corporation, *supra*; Cannon v. Texas Gulf Sulphur Company, *supra*; and Brennan v. Midwestern United Life Insurance Company, 259 F.Supp. 673 (N.D.Ind. 1966).

It is conceded that over 500,000 TGS shares were traded between 10:55 A.M. on April 16 and noon on April 17 and that the proposed questionnaire would have to be mailed to each person who sold during that period. In view of this Court's belief that only a very small number of those shares were sold by members of the proposed class, this would appear to be a most inappropriate case to set in motion the expensive and time-consuming procedures of Rule 23 treatment. As stated by Judge Pollack in Morris v. Burchard, 51 F.R.D. 530, 536 (S.D.N.Y.1971):

> "Class action, so instinct with benefits, is also fraught with mischievous effects, capable of overwhelming the judicial machinery and of imposing both unfair burdens and untoward pressures on the participants."

For the foregoing reasons, plaintiffs' motion for an order declaring that a class action may be maintained on behalf of post-10:55 A.M. reliance sellers is denied.

Settle order on notice.