**Don D. PRICE et al., Plaintiffs,**

v.

**Melvin D. SKOLNIK et al., Defendants.**

**No. 70 Civ. 2008.**

United States District Court,
S. D. New York.

Aug. 5, 1971.

aries or affiliates, including but not limited to Computer Tools Inc. (Computer), Educational Applications Inc. (Educational), Federated Purchaser Inc. (Federated), American Postal Corporation (American) and Quotamation Inc. (Quotamation) during the period from November 1, 1967 through December 31, 1969 by reason of the wrongs complained of in the complaint.

The three plaintiffs purchased on the open market a total of 2,390 shares of Dekcraft stock between November 13, 1967 and June 9, 1969 and a total of 1,000 shares of Federated stock between July 26, 1968 and June 30, 1969. Plaintiffs Price and Palmos also purchased on the open market a total of 1,500 shares of Computer stock between February 20, 1969 and May 19, 1969, a total of 400 shares of Educational stock between February 17 and February 20, 1969, and a total of 1,300 shares of Quotamation stock on March 1 and April 23, 1969. Plaintiff Price alone purchased a total of 600 shares of American stock on the open market on July 8, 1968 and June 19, 1969. Plaintiff Price alone alleges that he purchased 4,000 shares of Dekcraft stock pursuant to an "investment letter" under which he agreed that he was acquiring the shares for investment and that Dekcraft agreed that it would register the shares at its expense prior to June 27, 1969 (Count II).

The basic charge is that the individual defendants through the parent corporation Dekcraft, which they controlled, played the "shell game," as explained below, before the Securities and Exchange Commission cautioned against that practice on July 2, 1969, to the damage of plaintiffs and the other members of the "class" which they seek to represent. They allege that the individual defendants entered into a plan, in violation of the Federal securities laws, to defraud plaintiffs and the other "class" members in the following manner. Dekcraft first was to be reconstituted as a "conglomerate." In November 1967 and thereafter

Shea, Gallop, Climenko & Gould, New York City, for plaintiffs by Michael Lesch, New York City, of counsel.

Stanger, Robson & Rothstein, New York City, for defendants by Harold M. Rothstein, New York City, of counsel.

GURFEIN, District Judge.

Plaintiffs move for an order, pursuant to Rule 23(c) (1) of the Federal Rules of Civil Procedure, determining that the action may be maintained as a class action.

The complaint in seven counts is brought on behalf of plaintiffs and all other persons who sustained damages as the result of purchases of the common stock of Dekcraft Corporation (Dekcraft) and of the stock of its subsidi-

Dekcraft was caused to issue more than 200,000 shares of "investment" stock at prices substantially below Dekcraft's then-price in the over-the-counter market, for which Dekcraft received $600,000. Dekcraft is alleged to have paid excessive "finders' fees" in connection with such sales. Dekcraft used a portion of the proceeds from these sales to purchase various businesses, to meet operating expenses and to pay salaries, expenses and emoluments, all of which were unconscionable in amount and improper. The purchases of businesses are said to have been without regard to value and for the purpose of building up as rapidly as possible the public image of Dekcraft as an "emerging conglomerate," with the further purpose of enriching the defendants through the increased value of their stock and other emoluments which they voted to themselves. Dekcraft, in furtherance of the plan to defraud, acquired a number of corporations which had ceased active operations or had little or no assets ("shell corporations") and in turn caused these subsidiaries to acquire other shell corporations, all of which had a substantial number of shares in the hands of the public. At the same time, defendants issued publicity containing exaggerated and misleading statements as to the financial condition of Dekcraft and its shell corporations and announced that they would distribute and in fact did distribute (spin off) stock in the shell corporations to Dekcraft shareholders and to the shareholders of its subsidiaries. Most of the announced distributions were in fact aborted by the ruling of the SEC in July, 1969 indicating that the Commission believed that the distribution of such securities required registration ([1969–70 Transfer Binder] CCH Fed. Sec.L.Rep. ¶ 77,725).

It is alleged that such announcements had the purpose and effect of creating the misleading appearance to plaintiffs and the members of the "class" that such subsidiaries were profitable, active and successful business entities, and of causing the prices of such stocks to rise sharply under circumstances which bore no relationship to the financial and business activities of these companies.

Dekcraft also organized Quotamation and caused a registration statement to be filed and on January 27, 1969 sent a prospectus to all shareholders of Dekcraft offering 400,000 shares of Quotamation at $5 per share. It is not alleged that the prospectus was false and misleading, but Quotamation in turn was caused to play the "shell game."

The plaintiffs then allege a long series of misleading statements made by the defendants which would tend to inflate and artificially manipulate the value of Dekcraft stock and the stock of its "shells." It is alleged among other things that the distribution of "shell" securities had the appearance of being valuable when in fact the securities distributed were worthless.

Plaintiffs pray for an accounting for damages and for an injunction against defendants prohibiting them from violating Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder.

I.

Initially it should be noted that plaintiffs purport to represent purchasers of the stock of Dekcraft's subsidiaries and affiliates, *including but not limited to* those of which plaintiffs themselves were open market purchasers. This purported "class" is too amorphous and imprecise. It is also totally unmanageable since plaintiffs do not specify which shareholders of exactly which corporations they wish to include. See Reinisch v. New York Stock Exchange, 52 F.R.D. 561 (S.D.N.Y.1971 per Wyatt, J.). Moreover, plaintiffs cannot possibly represent the purchasers of stock in corporations which they did not purchase since they themselves are not members of the classes they seek to represent. See Bluestein v. Friedman, CCH

Fed.Sec.L.Rep. ¶ 92,558, at 98,544 (S.D.N.Y.1970 per Murphy, J.).

The plaintiffs were purchasers of stock only in Dekcraft, Computer, Educational, Federated, American and Quotamation and they may, at best, represent only the purchasers of the stock of these corporations. We now consider whom these plaintiffs may represent in a class action.

## II.

■ A. *As to representing open market purchasers of Dekcraft stock* (Count I): Dekcraft in 1970 had more than 3,000,000 shares outstanding and 1,109 shareholders of record, an increase of more than 500 since 1967. During this period of November 1967 to December 1969, 17 brokers are indicated in the "pink sheets" as having made markets in Dekcraft stock. On several occasions during the period the trading in Dekcraft stock was considered "highly active." Based upon this information it is reasonable to conclude that the members of the class of Dekcraft stockholders are practically speaking too numerous to join. It is not necessary to know the exact number of persons in the class to be satisfied that the numerousness requirement has been met. See Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D.N.Y.1966 per Tyler, J.).

The common questions of law and fact are obvious: Does the "shell game," if proved as alleged in the complaint, give rise to a claim for damages under the Federal securities laws? The underlying factual determinations which must be made to answer this question of law are common to all purchasers of Dekcraft stock during the period of the alleged fraudulent scheme and there is no reason to believe that the claims of plaintiffs are not typical of the claims of all such open market purchasers. For these reasons and because of Rule 23's unique application to securities fraud cases, the use of the class action device is superior to other methods of adjudicating the controversy. Rule 23(b) (3); Advisory Committee's Notes, 39 F.R.D. at 103. The dates which should delineate the class should be between November 1, 1967, when the alleged conspiracy commenced and December 31, 1969.

■ B. *Plaintiff Price in Count II apparently seeks to represent all purchasers of "investment stock" of Dekcraft.* Price himself has commenced an action in the State Court seeking damages of $144,000 against Dekcraft for breaching its agreement to register his investment stock. Plaintiffs provide no separate figures as to the number of "investment stock" purchasers. Presumably they are all substantial purchasers who could well afford to maintain their separate actions—whether based upon fraud or upon breach of contract. Moreover, such investments are usually made on the basis of personal negotiation which distinguishes them from purchases on the public open market. See Dolgow v. Anderson, 43 F.R.D. 472, 492 (E.D.N.Y.1968, per Weinstein, J.). There is no compelling reason to lump "investment stock" purchasers with open market purchasers. There may be no questions of law or fact common to both, and investment letter purchasers may not have claims typical of the claims of the others. I hold that Count II is not to be maintained as a class action.

## III.

■ *With respect to the representation of the purchasers of securities in Federated* (Count III): After the acquisition of a controlling interest in it by Dekcraft, Federated is alleged to have been caused to enter into the "shell game" by the defendants. Until July 15, 1969, when trading was suspended, Federated shares were listed on the American Stock Exchange. More than 200,000 shares were traded in 1969 and by extrapolation it might be presumed that at least 300,000 shares were traded

in the period from July 26, 1968, when plaintiffs first purchased * to July 15, 1969 when trading was halted. The number of purchasers is presumably large enough for the maintenance of a class action. See Swanson v. American Consumer Industries, Inc., 415 F.2d 1326 (7 Cir. 1969) (151 is sufficient); Citizens Banking Co. v. Monticello State Bank, 143 F.2d 261 (8 Cir. 1944) (40 is sufficient); Fidelis Corp. v. Litton Industries, 293 F.Supp. 164, 171 (S.D.N. Y.1968) (35 to 70 is sufficient).

Count III may be maintained as a class action on behalf of Federated purchasers between July 26, 1968 and July 15, 1969. The claims of plaintiffs satisfy the other requirements of Rule 23 for the same reasons previously mentioned in connection with Dekcraft stockholders.

## IV.

*With respect to purchasers of Quotamation stock* (Count VII): Plaintiffs allege that defendants first caused Quotamation to sell its stock to the public on January 24, 1969. It had 991 stockholders of record by March 31, 1970. As previously noted, nothing in the complaint alleges that the prospectus was false and misleading. Despite this, it is the thrust of the complaint that Quotamation's stock was, like Federated, artificially inflated by its participation in the "shell game" and by its close association with Dekcraft which retained 83.3% of Quotamation's stock. Plaintiffs purchased Quotamation stock on March 1 and April 23, 1969. Plaintiffs may represent purchasers of Quotamation stock from January 24, 1969 through December 31, 1969.

## V.

*With respect to purchasers of Computer, Educational and American stock* (Counts IV, V and VI): The Court has been provided with information concerning only the number of shares outstanding of these companies, and nothing about sales of the stock. There is no information as to the number of purchasers involved.

Plaintiffs would have the Court aggregate the number of persons in each purported class in order to form one large "class," thus dispensing with the need for such information. The shareholders of each corporation received different communications, presumably each concerning his own corporation. That the ultimate purpose of the "shell game" and of making false communications might have been artificially to inflate the prices of both Dekcraft stock and the stock of the subsidiary corporations for the personal benefit of the individual defendants does not make a single class. It is the truth or falsity of the different communications or false impressions caused by each company's participation in the "shell game" which would establish liability in each instance. To permit all purchasers of stock in the different corporations to form a single class would make the litigation unmanageable and unnecessarily complicated. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 567 (2 Cir. 1968); see Reinisch v. New York Stock Exchange, *supra*; Advisory Committee's Notes, 39 F.R.D. at 104; Dolgow v. Anderson, *supra*, 43 F.R.D. at 492.

That does not mean, however, that a single action involving separate classes is not permitted. See Herbst v. Able, 47 F.R.D. 11 (S.D.N.Y.1969 per Motley, J.); Advisory Committee's Notes, 39 F.R.D. at 106. I can see no reason at this point why the same plaintiffs cannot represent different classes in one action so long as no conflict arises. There would be no prohibition against them to bring separate actions on behalf of each class. Even if a conflict does subsequently arise, the Court can adequately supervise it by further order of substitution or by improving it through the

---

\* Dekcraft is alleged to have obtained control in October 1968.

intervention of additional parties of a stated type. See Rule 23(c) (1); Advisory Committee's Notes, 39 F.R.D. at 104.

If a proper showing of numerousness is made after further discovery, additional classes of purchasers of Computer, Educational and American can be formed at a later time. (See Rule 11A of the Civil Rules of this Court.) Indeed, the parties have requested that the question of notice and who bears the cost not be decided at this time. The plaintiffs should be permitted further discovery with respect to Counts IV, V and VI to seek a determination of whether additional classes may appropriately be established. If application for additional classes is not made by October 1, 1971, proposed notices should then be submitted to the Court with respect to Dekcraft, Federated and Quotamation purchasers.

### VI.

■ As previously noted, plaintiff Price has instituted an action in the New York Supreme Court based upon the alleged breach by Dekcraft of its agreement to register the "investment stock" acquired by Price. Defendants contend that the institution of this class action will act as leverage for the possible settlement of Price's individual action in the State Court and that if that is settled, plaintiff Price could cease to represent the classes effectively. Defendants claim that a conflict exists which should result in a denial of the motion. See Hansberry v. Lee, 311 U.S. 32, 44, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Plaintiff on the other hand contends (and it is undenied) that there was a settlement of his individual action which was arranged but for the question of exchanging general releases. Price refused to give Dekcraft a general release because the institution of this class action was imminent. Thus, it was the desire of Price to prosecute this class action which prevented the settlement of

his individual action. Under these circumstances, Price may act as a representative of the classes, but only upon his agreement that if there should be a settlement in the State action prior to the determination of this action, the nature of the settlement shall be presented to this Court for its determination of whether Price can remain as a class representative.

So ordered.