Thomas Edward **KINSEY**, Plaintiff,

v.

**LEGG, MASON & COMPANY, INC.,** Defendant and Third-Party Plaintiff,

v.

The **KLEIN INSTITUTE FOR APTITUDE TESTING, INC.,** and the Psychological Corporation, Third-Party Defendants.

**Civ. A. No. 1338–71.**

United States District Court, District of Columbia.

July 5, 1973.

Drew S. Days, III, New York City, for plaintiff.

C. William Tayler, Washington, D.C., for defendant Legg, Mason.

### MEMORANDUM

GASCH, District Judge.

This matter came on for consideration of the motion of defendant Legg, Mason & Company, Inc., to dismiss certain claims and to dismiss this action as a class action. The record discloses that in late 1968, the plaintiff, Thomas Edward Kinsey, sought employment with Legg, Mason as a retail securities salesman through an employment agency. Legg, Mason interviewed Kinsey and administered to him certain tests that were furnished by third-party defendants, The Klein Institute for Aptitude Testing, Inc., and The Psychological Corporation. Kinsey was not hired because, in Legg, Mason's view: (1) Kinsey did not have sufficient sales experience, (2) Kinsey had not done sufficiently well on the tests to warrant Legg, Mason taking the financial risk in hiring him in light of his lack of sales experience, and (3) Legg, Mason was not actively seeking to hire securities salesmen-trainees in early 1969 due to the general decline of activity in the securities market.[1]

On February 28, 1969, the plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) in which he alleged that he was not hired by Legg, Mason because of his race (Negro). After conducting its statutory investigation pursuant to 42 U.S.C. § 2000e–5, the EEOC issued its decision dated December 28, 1970, holding that:

> Reasonable cause exists to believe that Respondent is engaging in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 by administering unvalidated employment tests which systematically exclude Negroes, including Charging Party, and other minorities from equal employment opportunities.

> Reasonable cause exists to believe that Respondent is engaging in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 by implementing hiring and recruitment policies which systematically exclude Negroes and other minorities from equal employment opportunities.[2]

Thereafter, on June 9, 1971, the EEOC issued its "thirty day letter" to Kinsey informing him of his right to sue in U. S. District Court. On July 7, 1971, Kinsey filed the instant action seeking damages, declaratory judgment and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (hereafter referred to as "Title VII"). In his complaint, plaintiff seeks to represent a class composed of "Black persons who might be employed by Legg, Mason at its investment offices located in Virginia, New York, Maryland, and the District of Columbia, who

---

1. See Affidavit of James W. Brinkley, Executive Vice-President in charge of retail sales at Legg, Mason & Company, Inc.

2. EEOC Decision 71–966 (December 28, 1970), attached as Exhibit II to Defendant's Motion to Dismiss Certain Claims and to Dismiss Class Action.

have been and continue to be or might be adversely affected by the practices complained of herein." [3] However, in his answer to the third set of interrogatories propounded by defendant Legg, Mason, the plaintiff apparently seeks to expand the putative class to include Orientals, American Indians, women, Spanish-surnamed and Black persons: (a) who have applied for jobs at Legg, Mason and have not been hired; (b) who have applied for jobs at Legg, Mason, have been given employment tests and have been hired; (c) who have applied for jobs at Legg, Mason, have been hired but left their employment at Legg, Mason as a consequence of their discriminatory treatment in the terms and conditions of employment; (d) currently employed by Legg, Mason who are presently being subjected to discriminatory treatment in the terms and conditions of employment; and (e) who would have applied for jobs at Legg, Mason but did not because of the failure by Legg, Mason to recruit Black and other minorities on a non-discriminatory basis.

Defendant Legg, Mason has moved to dismiss the class action aspect of this case on the grounds that it is not properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure; or alternatively, that this action proceed as an action for an individual claim for money damages and a claim for declaratory judgment and injunction with regard to prospective Black retail securities sales applicants at Legg, Mason's Virginia, Maryland, and District of Columbia offices. In addition, Legg, Mason contends that the claims of discriminatory practices alleged by Kinsey which go beyond the EEOC decision should be dismissed; that Kinsey's claims under 42 U.S.C. § 1981 be limited to the issues which the Court may consider under Title VII;

and that the claims asserted under 42 U.S.C. § 1983, and under the Fifth and Fourteenth Amendments to the United States Constitution should be dismissed because of the absence of state or federal action. Since plaintiff has no objection to the dismissal of the claims grounded upon 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments, this Court orders that those claims are hereby dismissed. However, the other contentions of Legg, Mason are opposed by plaintiff and a proper resolution of those questions requires some discussion of the facts and applicable legal principles.

As noted earlier, plaintiff evidently seeks to represent members of minority groups who might be employed in Legg, Mason's Virginia, Maryland, District of Columbia, and New York offices, and also seeks declaratory and injunctive relief for "employees" with respect to their "compensation, terms, conditions and privileges of employment." In addition, plaintiff alleges in his complaint that Legg, Mason has engaged in discriminatory practices by "limiting, segregating, and classifying employees" in ways which deprive them of equal employment opportunities. Thus, it appears that plaintiff would like to represent all members of minority groups employed at the above offices of Legg, Mason in every job category with respect to each of the previously mentioned incidents of employment, even though his EEOC complaint [4] and the EEOC decision contain no reference to compensation, terms, conditions and privileges of employment, or to limiting, segregating and classifying employees. Defendant Legg, Mason argues that the claims of plaintiff which go beyond the allegations of recruitment, testing and hiring discrimination should be dismissed because they were not raised during the administrative proceedings and therefore not

---

3. Complaint, Paragraph II.

4. *See* Exhibit I attached to Defendant's Motion to Dismiss Certain Claims and to Dismiss Class Action.

the subject of EEOC conciliation efforts.

The pertinent statutory provisions contained in 42 U.S.C. § 2000e–5(a) read as follows:

> Whenever it is charged in writing under oath by a person claiming to be aggrieved . . . that an employer . . . has engaged in an unlawful employment practice, the Commission shall furnish such employer . . . (hereinafter referred to as the 'respondent') with a copy of such charge and shall make an investigation of such charge, provided that such charge shall not be made public by the Commission. If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, *the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.* (Emphasis added).

The statutory language and legislative history of Title VII of the Civil Rights Act indicate a clear preference for the resolution of disputes over employment discrimination through the informal methods of the EEOC rather than court action. As one court aptly stated:

> By establishing the EEOC Congress provided an inexpensive and uncomplicated remedy for aggrieved parties, most of whom were poor and unsophisticated. Conciliation also was designed to allow a respondent to rectify or explain his action without the public condemnation resulting from a more formal proceeding. Furthermore, the absence of direct government coercion was thought to lessen the antagonism between parties and to

encourage reasonable settlement. The need for voluntary compliance was stressed since more coercive remedies were likely to inflame respondents and encourage them to employ subtle forms of discrimination.[5] (Footnote omitted).

The Act envisions persons injured by discriminatory employment practices filing written charges with the EEOC that state with a reasonable degree of specificity the factual grounds upon which they base their allegations of illegal conduct.[6] If the Commission determines that there is reasonable cause to believe the charges are true, it will utilize its powers of conciliation and persuasion to eliminate the unlawful employment practices. Should the Commission's efforts prove unsuccessful, it will notify the aggrieved persons of their right to seek remedial action in federal court.

▪ A review of numerous cases concerning the issue of employment discrimination reveals that a complaining party must satisfy two jurisdictional prerequisites in asserting a cause of action under Title VII: (a) a charge must be filed with the EEOC, and (b) statutory notice from the Commission of the right to sue must be received. Local 179, United Textile Workers of America v. Federal Paper Stock Co., 461 F.2d 849 (8th Cir. 1972); Robinson v. Lorillard Corp., 444 F.2d 791 (4th Cir. 1971); Stebbins v. Continental Insurance Companies, 143 U.S.App.D.C. 121, 442 F.2d 843 (1971); Beverly v. Lone Star Lead Construction Corp., 437 F.2d 1136 (5th Cir. 1971); Flowers v. Local No. 6, Laborers Int'l Union of North America, 431 F.2d 205 (7th Cir. 1970); Fekete v. U. S. Steel Corp., 424 F.2d 331 (3rd Cir. 1970); Local 186, Int'l Pulp, Sulphite

---

5. Waters v. Wisconsin Steel Workers of Int'l Harvester Co., 427 F.2d 476, 486–487 (7th Cir.), cert. denied, United Order of American Bricklayers & Stone Masons, Local 21 v. Waters and Int'l Harvester Co. v. Waters, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

6. See 29 C.F.R. § 1601.11(a)(3), which requires that each charge contain "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practice."

and Paper Mill Workers v. Minnesota Mining and Mfg. Co., 304 F.Supp. 1284 (N.D.Ind.1969). In other words, it is well settled that a person seeking relief for employment discrimination may not ignore the statutory procedures, bypass the EEOC and proceed directly to federal court. Waters v. Wisconsin Steel Workers of Int'l Harvester Co., 427 F.2d 476 (7th Cir.), cert. denied, United Order of American Bricklayers & Stone Masons, Local 21 v. Waters and Int'l Harvester Co. v. Waters, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970); Miller v. Int'l Paper Co., 408 F.2d 283 (5th Cir. 1969). Relying upon the congressional preference for initial EEOC consideration of alleged discriminatory practices and upon the cases of King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga.1968), and Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970), defendant Legg, Mason has raised the question whether Kinsey's judicial claims should be limited to those claims of discrimination in recruiting, testing and hiring which originally were the subject of EEOC investigatory and conciliatory procedures. *See also* Phillips v. Columbia Gas of West Virginia, Inc., 347 F.Supp. 533, 538–539 (S.D.W. Va.1972.)

In King v. Georgia Power Co., 295 F. Supp. 943 (N.D.Ga.1968), the court was confronted with the issue whether the defendant company would be required to defend against charges "different from or beyond the scope of the charge" filed with the EEOC. 295 F.Supp. at 946. Although the *King* decision does not delineate the allegations contained in the EEOC complaint and the judicial complaint, the court adopted a rule which "in effect limits the civil action to that range of issues that would have been the subject matter of the conciliation efforts between EEOC and the employer." 295 F.Supp. at 947. The court also emphasized that "[i]f the civil action were not so limited, then the primary emphasis of this Title [VII] would be circumvented,

i. e., an emphasis upon voluntary settlement of all issues without an action in the District Court." 295 F.Supp. at 947.

In Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970), the plaintiff had charged in her EEOC complaint that she was struck and verbally abused by her supervisor and was denied pay when she was absent from work as a result of the injury inflicted by the supervisor. The plaintiff was an employee and was certainly affected by the defendant's purported employment practices and conditions of employment. Her judicial complaint sought injunctive relief from "the maintenance of any policy, practice, custom or usage of harassing, threatening and mistreating employees, and discriminating against said employees because of race or color or national origin with respect to compensation, terms, conditions and privileges of employment." 431 F.2d at 459–460. In ruling that the matters alleged in the judicial complaint were not outside the scope of the plaintiff's EEOC charges, the court in *Sanchez* cited the *King* case for the proposition that "allegations in a judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation [sic] during the pendency of the case before the Commission.'" 431 F.2d at 466. While noting that the permissible range of inquiry in a Title VII court action "'is based on the inherent logic of the stated rule within the statutory scheme,'" (431 F. 2d at 467), the court in *Sanchez* enunciated the rule that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." 431 F.2d 466.

■ Applying the *Sanchez* rule to the instant case, this Court finds that the matters alleged by Kinsey in his judicial complaint pertaining to the terms and conditions of employment are beyond the

scope of the EEOC investigation which can reasonably be expected to grow out of his charge that he was denied employment because of his race. It should be emphasized that Kinsey was an applicant for employment and never attained the status of an employee. In his charge of discrimination, Kinsey's only factual allegation was that he was not hired because of his race. After the EEOC investigation, the Commission issued its decision which was limited to findings of probable cause as to discrimination on the part of Legg, Mason in hiring, recruitment and testing.[7] The administrative record does not contain any reference to Legg, Mason's alleged discriminatory practices in the terms and conditions of employment.

This Court is mindful of the fact that EEOC complaints are generally filed by laymen unlearned in the law and that consequently courts have established liberal standards for construing factual contentions in charges of discrimination in order to accomplish the purposes of the Civil Rights Act. Nevertheless, even the most generous construction of the facts and issues before the EEOC concerning Legg, Mason's hiring, recruiting and testing procedures does not sustain an across-the-board attack in federal court upon every aspect of the company's employment practices. The record is clear that the EEOC was not requested to investigate these practices and that litigation of their validity in a Title VII enforcement suit at the present time would be unjustified. If parties were given complete freedom to litigate claims of discrimination never presented to the EEOC for investigation and conciliation, it would result in the frustration of the statutory scheme and policies

favoring informal persuasion and voluntary compliance. *See* Tedford v. Airco Reduction, Inc. (5th Cir. 1972), 4 E.P.D. ¶ 7654, opinion vacated and withdrawn, 4 E.P.D. ¶ 7776; Phillips v. Columbia Gas of West Virginia, Inc., 347 F.Supp. 533 (S.D.W.Va.1972); Arey v. Providence Hospital, 55 F.R.D. 62 (D.D.C. 1972); Edwards v. North American Rockwell Corp., 291 F.Supp. 199 (C.D. Cal.1968). Accordingly, this Court hereby dismisses those claims in plaintiff's complaint which go beyond allegations of discrimination in recruitment, testing and hiring.

Kinsey also seeks to assert claims under 42 U.S.C. § 1981, and asks this Court to allow "costs herein including reasonable attorney fees pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act and other additional relief as may appear to the Court equitable and just."[8] In this connection, Legg, Mason contends that the relief which the Court may grant herein with with respect to Section 1981 should be restricted to the same relief which may be granted under Title VII. In support of its contention, Legg, Mason states that the policy of conciliation contained in the statutory provisions of Title VII should preclude litigation of issues which were not within the scope of the EEOC complaint or decision, even if such issues are sought to be raised in the context of a claim under Section 1981. Although there exists some difference of judicial opinion on the question, the better rule appears to be the one adopted in Waters v. Wisconsin Steel Workers of Int'l Harvester Co., 427 F.2d 476 (7th Cir.), cert. denied, United Order of American Bricklayers & Stone Masons, Local 21 v. Waters and

---

7. In its decision, the Commission stated:
The testing and recruitment issues though not specifically alleged in the charge, are so like and related to the issues raised by the charge as to be ripe for decision at this time. King v. Georgia Power Co., 295 F.Supp. 943 (N.

D.Ga.1968), Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970), 63 L.C. 9473.
EEOC Decision 71–966, at 2, n. 2 (December 28, 1970).

8. Complaint, Paragraph IX.

Int'l Harvester Co. v. Waters, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).[9] In that case the court held in pertinent part:

> "Because of the strong emphasis which Congress placed upon conciliation, we do not think that aggrieved persons should be allowed intentionally to bypass the Commission [EEOC] without good reason. We hold therefore, that an aggrieved person may sue directly under section 1981 if he pleads a reasonable excuse for his failure to exhaust EEOC remedies."

427 F.2d at 487.

Following the well-reasoned decision in *Waters*, this Court holds that Section 1981 is not a carte blanche authorization to circumvent and undermine the preferred policy of exhausting administrative remedies and utilizing the conciliatory procedures of the EEOC. Accordingly, plaintiff will not be allowed to assert claims under Section 1981 which go beyond his claims of discrimination in hiring, recruitment and testing that were originally raised during the EEOC proceedings.

Defendant Legg, Mason has also moved for a dismissal of this action as a class action on the grounds that it fails to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Of course, since the issues before the Court have been limited to Legg, Mason's hiring, recruitment and testing procedures, it is unnecessary to decide whether plaintiff can represent members of a potential class that may have been injured by alleged discriminatory policies in the terms and conditions of employment. Plaintiff apparently would still seek to represent the largest possible class of persons that could have been aggrieved by the practices of Legg, Mason which remain the subject of this litigation.

■ It has long been recognized that under certain circumstances class actions are allowable for suits alleging racial discrimination in employment under Title VII of the 1964 Civil Rights Act. *See,* e. g., Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968). However, it should be emphasized that not every civil action brought pursuant to Title VII automatically qualifies as a proper class action under the stringent requirements of Rule 23(a). In the case of Gresham v. Ford Motor Co., 53 F.R. D. 105, 106–107 (N.D.Ga.1970), the court, faced with a plaintiff whose claim arose from an isolated factual situation, stated in part:

> [T]his appears to be a case of particular action taken against an individual, resolution of the dispute involving which will require only examination of the particular facts involved . . . . The sole basis for allowing maintenance of this suit as a class action is that the actions taken against the plaintiff were allegedly motivated by racial discrimination. Only by accepting the premise that every civil action for racial discrimination in employment states a case for treatment as a class action can the plaintiff's position be accepted and the class action allowed to proceed.

> This premise is unacceptable on a legal level.

> \*　\*　\*　\*　\*　\*

> The premise that every civil action for racial discrimination in employ-

---

9. *Compare,* Caldwell v. National Brewing Company, 443 F.2d 1044 (5th Cir.) cert. denied, 404 U.S. 998, 92 S.Ct. 560, 30 L.Ed.2d 551 (1971), and Young v. International Telephone and Telegraph Co., 438 F.2d 757 (3rd Cir. 1971). In Stebbins v. Continental Insurance Companies, 143 U.S.App.D.C. 121, 442 F.2d 843 (1971), the United States Court of Appeals for the District of Columbia Circuit was urged by the EEOC to reject the *Waters* rule and hold that 42 U.S.C. § 1981 creates a cause of action for racial discrimination in private employment which allows an individual to proceed directly to court with his claim. However, the Court of Appeals specifically refused to reach the question.

ment states a case for treatment as a class action is also unacceptable on the level of equity. Where an individual of a certain race, color, religion, sex, or national origin is aggrieved by particular company action against him, it is patently unfair to the company to require it to list, explain and defend every refusal to hire, failure to promote, disciplinary action and termination of every applicant or employee of that race, color, religion, sex, or national origin since enactment of Title VII.

Thus, as in every other cause of action, an employment discrimination suit must satisfy all the prerequisites of Rule 23(a) before it can be maintained as a class action. Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

█ The third requirement of Rule 23(a), that the claims of the representative parties be typical of the claims of the putative class, is satisfied when there is no conflict or substantial diversity of interest between the representatives and the absentees. *See generally,* Minnesota v. U. S. Steel Corp., 44 F.R.D. 559, 566–567 (D.Minn.1968); Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60, 63 (S.D.N.Y.1969). Plaintiff argues that there is no difference between his claims of discrimination in defendant's hiring procedures for retail securities salesmen, and the claims of black applicants for institutional sales and non-sales positions. However, the record re-

veals diverse considerations with respect to the qualifications, salaries and duties of retail securities salesmen, as distinguished from institutional salesmen and non-sales (operational) personnel; therefore, the claims and interests of Kinsey are significantly different from the claims and interests of persons seeking employment in a position other than a retail securities salesman.[10]

Institutional officers, as a qualification for the job, must have substantial knowledge of the securities they recommend and an overall understanding of economic, monetary and securities market conditions. Moreover, institutional salesmen receive a comparatively high salary because of their prior experience in securities sales, financial analysis and securities evaluation. Retail salesmen, on the other hand, are compensated at a lesser rate, and are hired with the expectation that they will become successful retail salesmen. They are trained for a two-year period, during which time Legg, Mason invests approximately $18,000 in each retail sales applicant for training, expenses and salary. Consequently, Legg, Mason must seriously weigh the age, experience, education, background and other qualifications of each applicant for a retail securities salesman position before deciding to make the $18,000 investment. The attachments to defendant's motion indicate that these factors are not considered in the same way and to the same extent with respect to institutional salesmen. For example, an institutional salesman is trained and experienced prior to his being hired and there is no substantial monetary investment made by Legg, Mason. Also, the differences in the qualifications, duties and compensation of non-sales (operational) personnel, vis-a-vis retail securities salesmen, are apparent from the "job descriptions" attached as Exhibit C to the affidavit of James W. Brinkley.

---

10. *See* Affidavit of James W. Brinkley, Executive Vice-President in charge of re-

tail sales at Legg, Mason & Company, Inc., and the exhibits attached thereto.

The divergent factors and qualifications considered by Legg, Mason in its decision whether or not to hire an applicant for a position as a retail securities salesman, institutional salesman or in a non-sales capacity, precludes plaintiff herein from representing an ill-defined class that would encompass prospective employees of all job classifications. *See* Bradley v. Southern Pacific Co., Inc., 51 F.R.D. 14 (S.D.Texas 1970). The bald assertion that there are members of a class who share the same or similar grievances as plaintiff does not comply with the "typicality" requirement of Rule 23(a)(3). Bean v. Star Fibers, Inc., 17 F.R.Serv.2d 124 (D.S.C. 1972); White v. Gates Rubber Co., 53 F.R.D. 412 (D.Colo.1971). Thus, this Court finds that plaintiff has only satisfied Rule 23(a)(3) to the limited extent that his claims may be typical of a putative class of black persons who were allegedly refused jobs as retail securities salesmen because of their race.

With the potential class restricted to black persons who applied for but were denied retail securities salesman positions, it is apparent from the record that the class is not so "numerous that joinder of all members is impracticable." Rule 23(a)(1). It is well settled that a bare allegation of numerosity founded upon mere conjecture as to the size of the class does not satisfy the requirements of Rule 23(a)(1). Dennis v. Norwich Pharmacal Co., 17 F.R.Serv.2d 126 (D.S.C.1973); Bean v. Star Fibers, Inc., 17 F.R.Serv.2d 124 (D.S.C.1972); Tolbert v. Western Electric Co., 56 F.R. D. 108 (N.D.Ga.1972); Allen v. Pipefitters, Local 208, 56 F.R.D. 473 (D.Colo. 1972). The court in Tolbert v. Western Electric Co., 56 F.R.D. 108, 113 (N.D. Ga.1972), accurately interpreted Rule 23(a)(1) as follows:

*"The burden of satisfying the requirements of Rule 23 falls on those who seek to maintain a class action and it is their obligation to make a positive showing that, among other things, the members of the proposed class are so numerous that their joinder is impracticable.* Demarco v. Edens, 390 F.2d 836 (2d Cir. 1968); Neddo v. Housing Authority of City of Milwaukee, 335 F.Supp. 1397 (E. D.Wis.1971); Kinzler v. New York Stock Exchange, 53 F.R.D. 75 (S.D. N.Y.1971); Cannon v. Texas Gulf Sulphur Co., 53 F.R.D. 216 (S.D.N.Y. 1971). While the failure to enumerate and identify class members with precision is not fatal, Price v. Skolnik, 54 F.R.D. 261 (S.D.N.Y.1971); Vernon J. Rockler & Co. v. Graphic Enterprises, Inc., 52 F.R.D. 335 (D. Minn.1971), *mere speculation as to the existence of the class is insufficient to comply with Rule* 23(a)(1). Kinzler v. New York Stock Exchange, *supra*; Cannon v. Texas Gulf Sulphur Co., *supra."* [Emphasis supplied.]

In the instant case the Brinkley affidavit filed on behalf of Legg, Mason states that the company knows of no other black person who has made application to the company for a retail securities salesman position. In addition, plaintiff has made no showing that a large number of black applicants have been rejected by the defendant on racial grounds. It is clear, therefore, that plaintiff has not carried his burden of demonstrating that there are too many members of a putative class to make joinder feasible. In sum, the plaintiff has failed to meet the "typicality" requirement of Rule 23(a)(3) or the "numerosity" requirement of Rule 23(a)(1), and accordingly, the class action aspect of this case is hereby dismissed. Thus, it is unnecessary to resolve the serious doubts that exist concerning plaintiff's capacity to "fairly and adequately protect the interests of the class." Rule 23(a)(4).

It should be noted, however, that if plaintiff proves he is entitled to relief on the merits of this case, the Court is empowered to grant a declaratory judgment and injunctive relief which would,

in effect, bar defendant Legg, Mason from engaging in discriminatory practices regarding the hiring, recruitment and testing of all applicants for the job of retail securities salesman. In other words, due to the very nature of the rights plaintiff seeks to vindicate, the Court could fashion a decree that would run to the benefit not only of Kinsey, but also to any other person who may be similarly situated. *See* Bailey v. Patterson, 323 F.2d 201, 206 (5th Cir. 1963).

Accordingly, the parties are hereby directed to submit a proposed order consistent with this opinion.

So ordered.